City of Union City and the State of New Jersey dismissing the complaint are granted.

THE STATE OF NEW JERSEY v. KEVIN
ALEXANDER, DEFENDANT.

Superior Court of New Jersey
Law Division, Union County

Decided October 30, 1984.

*William A. Daniel*, Assistant Prosecutor, for plaintiff (*John H. Stamler*, Prosecutor of Union County, attorney).

*Jeffrey D. Sagotsky*, Assistant Deputy Public Defender, for defendant (*Joseph H. Rodriguez*, Public Defender, attorney).

WOLIN, J.S.C.

The thrust of this opinion is directed toward the legal distinction between volunteering false information to a law enforcement officer with purpose to hinder the apprehension, prosecution, conviction or punishment of another from the same conduct committed by one who seeks to avoid his own detection with the same consequences. *See N.J.S.A.* 2C:29–3, *et seq.*

After his apprehension and arrest in connection with auto theft, the defendant gave to the police a false name and address.[1]  Subsequently, when confronted with information supplied by an accomplice, he provided his correct name and address. Based upon this occurrence he was indicted, *inter alia*, for volunteering false information to a law enforcement officer with purpose to hinder his own apprehension, prosecution, conviction or punishment in accord with *N.J.S.A.* 2C:29–3(b)(4).  At the close of the State's case the defendant moved for the entry of a judgment of acquittal pursuant to *R.* 3:18–1.

---

[1] The defendant was a passenger in an automobile operated by his co-defendant.  Both provided the police with false names and addresses.  Neither possessed any identifying documents nor the proper vehicle identification.  Summonses were issued to the co-defendant for multiple motor vehicle violations and defendants were released.  The vehicle was impounded.  During an inventory of the vehicle the police learned that the vehicle was stolen.  They immediately reapprehended both defendants and then placed them under arrest.  The co-defendant failed to appear for trial.

This application was bottomed on the theory that the fictitious information given to the police was not voluntary but in response to a police inquiry and therefore did not constitute a violation of the statute. In support of this argument defendant relied on the recent case of *State v. D'Addario,* 196 *N.J.Super.* 392 (Law Div.1984) wherein a court of co-equal jurisdiction reasoned that the word "volunteer" in the context of *N.J.S.A.* 2C:29–3(a)(7) refers solely to those persons who take the initiative in coming forward with information for law enforcement officers and does not apply to those who supply false information in response to a police initiated inquiry.

■ Defendant's reliance on *State v. D'Addario, supra,* is misplaced and represents a misreading of that decision. At first blush, that argument has facial appeal since both *N.J.S.A.* 2C:29–3(a)(7) and 2C:29–3(b)(4) embody the same language— "volunteers false information to a law enforcement officer." However, the distinguishing feature between these two sections is that in *N.J.S.A.* 2C:29–3(a)(7) the volunteering of false information to a law enforcement officer is with the purpose to hinder the apprehension, prosecution, conviction or punishment of *another* for an offense, while 2C:29–3(b)(4) pertains to *one's own* apprehension, prosecution, conviction or punishment. As to conduct in regard to another, the *Final Report of the New Jersey Criminal Law Revision Commission*—Volume II, commentary at 282–283, unqualifiedly rejected the concept of accomplice liability where a person after the fact assists an offender and substituted in its place the theory of obstructing justice as a separate and distinct crime with appropriate penalties unrelated to the principal offense that occasioned the obstructive behavior. Where one hinders his own apprehension, prosecution, conviction or punishment non-cooperation with police investigations focuses on primary criminal avoidance for the principal offense.

■ While it is true that obstructive behavior engaged in for another and similar conduct for one's own self each serves to

diminish police effectiveness, the former is only actionable by those who take the initiative in throwing police off the track. *Id.* at 285. The supplying of false information to police where they initiate the inquiry and the respondent is not the primary offender fails to constitute "volunteered" misinformation. Additionally, in *D'Addario, supra,* there were other sections of the statute that arguably may have applied to the factual circumstances existent therein.

■ Here, unlike *D'Addario, supra,* the tender of fictitious information by the primary offender was an attempt to escape his own criminal responsibility and constitutes a separate and distinct crime disassociated with the underlying offense that initially attracted police attention. All that the State need prove is that false information was volunteered to a law enforcement officer with defendant's purpose being to hinder his own apprehension, prosecution, conviction or punishment. The pertinent part of *N.J.S.A.* 2C:29–3(b)(4) provides:

> A person commits an offense if, with purpose to hinder his own apprehension, prosecution, conviction or punishment, he:
>
> . . . .
>
> Volunteers false information to a law enforcement officer.

The operative words of the statute are *with purpose;* that is, the voluntary supplying of false information to a law enforcement officer *with purpose* to accomplish a desired object—the hindering of one's own apprehension, prosecution, conviction or punishment. As set forth in *N.J.S.A.* 2C:2–2(b)(1) the phrase "with purpose" is defined as follows:

> A person acts purposely with respect to the nature of his conduct or a result thereof if it is his conscious object to engage in conduct of that nature or to cause such a result. A person acts purposely with respect to attendant circumstances if he is aware of the existence of such circumstances or he believes or hopes they exist. . . .

■ Therefore, it is clear from the mandate of the statute that not all false information provided to a law enforcement officer is actionable. False information given knowingly, recklessly or negligently would lie beyond the boundary of intend-

ment. Evidence in support of this premise is found in the minimum requirements of culpability wherein it states:

> ... A person is not guilty of an offense unless he acted purposely, knowingly, recklessly or negligently, *as the law may require,* with respect to each material element of the offense. [*N.J.S.A.* 2C:2–2(a); emphasis supplied]

■■ Under this statute purposeful conduct is a material element of the offense. Any lesser proof would not suffice to sustain a conviction. A comparison of the predecessor statute, *N.J.S.A.* 2A:148–22.1,[2] repealed by the enactment of the *Code of Criminal Justice* and the current source material for *N.J.S.A.* 2C:28–4, with the statute implicated herein amply demonstrates that the framers of the *Code of Criminal Justice* intended the creation of a new crime for any person who attempts to hinder his own apprehension, prosecution, conviction or punishment by giving false information to a police officer and established a higher standard of culpability for the commission of that crime.

Beyond the application of the appropriate standard of culpability the defendant asserts that a police initiated inquiry, by definition, cannot be voluntary. As adverted to in *State v. D'Addario, supra,* the *Code of Criminal Justice* commands that the provisions of the code shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes of the code and the special purposes of the particular provision involved. *N.J.S.A.* 2C:1–2(c). Surely, with this admonition in mind, any undue, awkward or contorted interpretation of a term cloaked in sophistry must be judicially rejected. The term "volunteers" used as a verb denotes: "to say, tell, or communicate voluntarily." *The Random House Dictionary of the English Language* (1981)

---

[2]*N.J.S.A.* 2A;148–22.1 provided: "Any person who knowingly and willfully gives false information or causes false information to be given to any law enforcement officer or agency with respect to the commission of any crime or purported crime is guilty of a misdemeanor."

■■■ The simple and unconvoluted meaning of the term "volunteers" includes responses given to police initiated inquiries. As expressed in *State v. Daniels*, 165 *N.J.Super.* 47 (App.Div.1979):

> Defendant is constitutionally privileged to refuse to respond to any questions by the police but not to give affirmatively false information.... [at 51]

To ascribe any other meaning to the word "volunteers" in regard to this specific section would serve to undermine the legislative imperative directed toward the creation of a new crime as well as obstruct the very obstruction of justice sought to be eliminated. The prophylactic purpose of the statute is to prevent conduct that could mislead, deter and distract the police from the detection of criminal offenders who deserve to be brought before the bar of justice. *Ibid.*

Any waste of investigative resources by law enforcement is unfortunate and expensive but a necessary burden to our citizenry. When it occurs with purpose to hinder one's own apprehension, prosecution, conviction or punishment it is even more unfortunate and qualifies for special treatment apart from the underlying offense.

■ In the ebb and flow of a confrontational episode a law enforcement officer may inquire of the detainee his name and address. He need not await the phenomenon of a spontaneous utterance from one who is momentarily or otherwise detained. The detainee need not respond; however, if he does and the information proves to be false within the purview of the statute the offense has occurred and the actor is subject to penal sanction. To discern any other statutory interpretation would serve to create an absurdity of the most immense proportions, promote dysfunction and frustrate the purposes central to effective law enforcement.

A copy of this opinion shall be placed in the court record amplifying the reasons previously stated by the court for denial of defendant's motion for the entry of a judgment of acquittal.