208 N.J. Super. 536 (1986)
506 A.2d 748
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
DENNY VALENTIN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted January 28, 1986.
Decided March 3, 1986.
*537 Before Judges MUIR, ANTELL and SHEBELL.
*538 Roger F. Mahon, Hunterdon County Prosecutor, attorney for appellant (Scott A. Smith, Assistant Prosecutor, of counsel and on the letter brief).
Thomas S. Smith, Jr., Acting Public Defender, attorney for respondent (Morton L. Anekstein, Assistant Deputy Public Defender, of counsel and on the letter brief).
The opinion of the court was delivered by MUIR, J.S.C. (temporarily assigned).
The issue on this appeal is whether a person can be criminally culpable under N.J.S.A. 2C:29-3b(4) of hindering his own apprehension by providing false information to a law enforcement officer in response to police questioning.
N.J.S.A. 2C:29-3b, provides:
A person commits an offense if, with purpose to hinder his own apprehension, prosecution, conviction or punishment, he:
* * * * * * *
(4) Volunteers false information to a law enforcement officer.
Indicted by a Hunterdon County Grand Jury for violating this statute, defendant moved to dismiss the charge. The trial court concluded the word "volunteers" requires the actor to take the initiative in providing the false information rather than giving it in response to police questioning.
The State, after grant of leave to appeal, challenges that construction.
We affirm and, in doing so, expressly overrule State v. Alexander, 198 N.J. Super. 594 (Law Div. 1984).
On April 9, 1985, a state trooper stopped a car driven by defendant for a routine motor vehicle violation. The car was registered to Dollar Rent-A-Car of Dania, Florida. The owner had reported that the car had been stolen by Denny Valentin, who had leased the car and had not returned it. Dollar Rent-A-Car sought to prosecute Denny Valentin. The trooper asked defendant his name. When defendant identified himself as *539 Ramon Velez, the trooper issued a motor vehicle summons and released him.
On April 17, 1985, the same trooper stopped defendant for another motor vehicle violation. The trooper requested identification. This time the defendant gave his own name.
In interpreting statutes, we look first to the language of the statute to discern legislative intent. Watt v. Franklin Borough, 21 N.J. 274, 277 (1956). If the plain meaning of the language is clear and unambiguous on its face and admits of only one interpretation, then we need to explore no further. Ibid.
Here, although the relevant statutory word "volunteers" appears reasonably clear on its face, the word is arguably susceptible to an alternate meaning. The most reasonable interpretation of the word in this context is that to be culpable the actor must take the initiative in giving the false information or must offer to give it without solicitation. State v. D'Addario, 196 N.J. Super. 392, 396 (Law Div. 1984). A more strained though possible construction is that the actor could be culpable simply by giving the false information in response to a non-compulsive solicitation.
Accordingly, although we have no doubt as to the true meaning, we go beyond the plain language to verify the legislative intent. Cf. 2A Sutherland, Statutory Construction, (4ed. 1973), § 46.04 at 86.
When first enacted, the New Jersey Code of Criminal Justice made it a crime to hinder the apprehension, prosecution or conviction of another. N.J.S.A. 2C:29-3.
One of the specific types of action identified as prohibited aid to another was "volunteer[ing] false information to a law enforcement officer." N.J.S.A. 2C:29-3a(7). The commentary to the Code, in explaining that particular type of prohibited aid, said:

*540 The borderline case of `volunteered' misinformation to the police, ... would not be covered elsewhere, and is intended to reach those who take the initiative in throwing the police off the track. [2 N.J.Crim.Law Rev.Comm'n Final Report, Commentary at 285 (1971); emphasis supplied].
That explanation is entitled to great weight. 2A Sutherland, Statutory Construction, supra, § 48.09 at 316.
There was no provision relating to hindering one's own apprehension, prosecution or conviction in the Code as originally enacted.
In 1981, the Legislature amended the Code prescribing four ways that made it an offense for a person to hinder his own apprehension, prosecution or conviction. N.J.S.A. 2C:29-3b(1) to (4). One of those prescribed ways, the statute provision at issue, mirrors the language of N.J.S.A. 2C:29-3a(7) quoted above.
In adopting the amendment, the Legislature evidenced no intent to change the meaning of "volunteered" ascribed by the Code commentary. Nor did the Governor evidence any such intent in his press release statement dated September 24, 1981, where he stated the amendment:
Establishes a new crime for any person who attempts to hinder his own apprehension, prosecution or conviction by concealing evidence, intimidating witnesses or by giving false information to a police officer.
We conclude that to be guilty under N.J.S.A. 2C:29-3b(4) the actor must take the initiative in providing the false information. He cannot be culpable if he responds falsely to a question by a law enforcement officer.
In so holding we find no distinction in the legislative intent between the provision of N.J.S.A. 2C:29-3a(7) and N.J.S.A. 2C: 29-3b(4).
Affirmed.
SHEBELL, J.A.D., concurring.
I vote to affirm the action of the trial judge even though I don't believe the Legislature intended to limit N.J.S.A. 2C: 29-3b(4) to exclude from its coverage those situations where a *541 person gives false information in response to a law enforcement officer's questioning. I am convinced the Legislature intended there to be a violation of this provision if a person with the purpose of hindering his own apprehension, prosecution, conviction or punishment gives false information to a law enforcement officer carrying out his official duties by questioning the culprit.
Subsection b was added to N.J.S.A. 2C: 29-3 in 1981 by amendment. The statement from the Office of the Governor, dated September 24, 1981, declared that the amendment:
Establishes a new crime for any person who attempts to hinder his own apprehension, prosecution or conviction by concealing evidence, intimidating witnesses or by giving false information to a police officer. [emphasis added]
I am satisfied that by using the term "volunteers" rather than "gives" in the amendment the Legislature intended nothing more than to limit application to those situations where the information is provided voluntarily as opposed to being given by compulsion or force. While that may be what the Legislature intended I find that they have not enacted their intention with sufficient clarity to allow application of the statute to any persons other than those "who take the initiative in throwing the police off the track."
The Legislature used the exact same language in adding N.J.S.A. 2C: 29-3b(4) as the statute contained prior to the amendment under N.J.S.A. 2C: 29-3(g), now a(7). The statute initially pertained only to persons who sought to hinder the apprehension or prosecution of another. Unquestionably, the framers of the original statute intended the language "volunteers false information to a law enforcement officer," which is now contained in both sections, to encompass only "those who take the initiative in throwing the police off the track." II Final Report of the New Jersey Criminal Law Revision Commission: Commentary 285 (October 1971); State v. D'Addario, 196 N.J. Super. 392, 396-97 (Law Div. 1984).
By using the same language in the amendment but intending a different meaning the Legislature has created a situation *542 where those of ordinary intelligence cannot be sufficiently informed and put on notice that N.J.S.A. 2C:29-3b(4) has a greater scope than 2C:29-3a(7). If we were to enforce N.J.S.A. 2C:29-3b(4) with broadened coverage, even though in keeping with the Legislature's intent, it would be violative of due process because of its conflicting meaning when viewed along side of the identical language contained in the same statute. Grayned v. City of Rockford, 408 U.S. 104, 108-109, 92 S.Ct. 2294, 2298-2299, 33 L.Ed.2d 222, 227-228 (1972).
As declared in Grayned, ibid., due process requires that a criminal prohibition not be vague, but be clearly defined to afford persons a reasonable opportunity to know what is prohibited so that the innocent are not trapped and to prevent arbitrary and discriminatory enforcement.
I concur with the majority for these reasons only. If the legislative intent is offended, the statute must be amended to clearly define the prohibited conduct, otherwise it is unenforceable in these circumstances.