STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. DENNY VALENTIN, DEFENDANT-RESPONDENT.

Argued September 22, 1986—Decided January 13, 1987.

*Jeffrey L. Menkin,* Deputy Attorney General, argued the cause for appellant (*W. Cary Edwards,* Attorney General of New Jersey, attorney).

*Morton L. Anekstein,* Assistant Deputy Public Defender, argued the cause for respondent (*Alfred A. Slocum,* Public Defender, attorney).

The opinion of the Court was delivered by

GARIBALDI, Justice.

This appeal concerns the interpretation of the word "volunteers" in *N.J.S.A.* 2C:29–3b(4). Specifically, we must decide whether a defendant who in response to a law-enforcement officer's inquiry gives a false name thereby violates *N.J.S.A.* 2C:29–3b(4), which proscribes "volunteer[ing] false information to a law enforcement officer."

## I

This case arises in the context of a motor vehicle stop. On April 9, 1985, a state trooper stopped a car driven by defendant, Denny Valentin, for a routine motor vehicle violation. The car was registered to Dollar-Rent-A-Car of Florida. The company had reported the car stolen by Valentin, the lessee, after he failed to return the vehicle. The company was seeking to prosecute the defendant.

When Valentin was stopped, the state trooper asked for his name, and he replied "Ramon Velez." The trooper then issued

a motor vehicle summons and released Valentin. Shortly thereafter the same trooper stopped Valentin for another motor vehicle infraction. This time Valentin gave his own name. The trooper however remembered that Valentin had given a different name on the prior occasion. Hence he was prosecuted on two counts: receiving stolen property in violation of *N.J.S.A.* 2C:20–7; and hindering his own apprehension by "volunteering" the name of Velez on the first occasion in violation of *N.J.S.A.* 2C:29–3b(4).

Defendant filed a motion in the trial court to dismiss count two of the indictment. The motion asserted that because defendant merely responded to the officer's questions, he did not "volunteer" false information within the meaning of *N.J.S.A.* 2C:29–3b(4). Specifically, defendant argues that the statute in question prohibits taking the initiative in providing false information to law-enforcement officials, not merely responding to an inquiry. The State asserts that this interpretation is too narrow and that the word "volunteer" includes practically any deliberate advance of information not technically required by law, whether or not made in response to a law-enforcement officer's inquiry.[1]

The trial court found that "[o]ne who is questioned by an armed law enforcement officer, has not 'taken the initiative' and affirmatively volunteered information but has merely responded to police questioning." Accordingly, he granted defendant's motion to dismiss. The Appellate Division affirmed, similarly concluding that "to be guilty under *N.J.S.A.* 2C:29–3b(4), the actor must take the initiative in providing the false information. He cannot be culpable if he responds falsely to a question by a law enforcement officer." *State v. Valentin*, 208 *N.J.Super.* 536, 540 (1986).

---

[1]The State does distinguish the case where the defendant simply responds to police questions with an exculpatory denial of implication in the crime. In such cases the State admits that the statute is not applicable. *See State v. Daniels*, 165 *N.J.Super.* 47, 51 (App.Div.), certif. denied, 81 *N.J.* 349 (1979).

The majority of the Appellate Division expressly overruled *State v. Alexander*, 198 *N.J.Super.* 594 (Law Div. 1984), certif. den., 102 *N.J.* 303 (1985), which had held that one "volunteers" information when responding to police-initiated inquiries. Instead, the majority followed *State v. D'Addario*, 196 *N.J.Super.* 392, 396 (Law Div. 1984), which held that to be culpable the actor must take the initiative in giving false information or must offer to give it without solicitation.

In his concurring opinion, Judge Shebell did not agree with the majority that the legislature had intended such a limited scope for *N.J.S.A.* 2C:29–3b(4). Nevertheless, he concurred in the judgment because he concluded that the legislators "ha[d] not enacted their intention with sufficient clarity to allow application of the statute to any persons other than those 'who take the initiative in throwing the police off the track.' " 208 *N.J.Super.* at 541. Pursuant to Rule 2:2–2(b) and Rule 2:5–6(a), we granted the State's motion for leave to appeal the judgment of the Appellate Division, 104 *N.J.* 372 (1986), and now affirm.

## II

*N.J.S.A.* 2C:29–3b(4) provides:

b.  A person commits an offense if, with purpose to hinder his own apprehension, prosecution, conviction or punishment, he:

\*        \*        \*        \*        \*        \*        \*        \*

(4) Volunteers false information to a law enforcement officer.

■ Our most rudimentary guide in this case is the doctrine that penal statutes must be strictly construed. *In re Suspension of DeMarco*, 83 *N.J.* 25, 36 (1980); *State v. Carbone*, 38 *N.J.* 19, 24 (1962); *State v. Gantt*, 101 *N.J.* 573, 592 (1986) (Handler, J., concurring); 3 Sands *Sutherland, Statutory Construction* ¶ 59.03 at 6–7 (4th ed. 1974).

"The rule that penal statutes are to be strictly construed has at its heart the requirement of due process. No one shall be

punished for a crime unless both that crime and its punishment are clearly set forth in positive laws." *In re Suspension of DeMarco, supra,* 83 *N.J.* at 36. Penal statutes must be sufficiently definite so that ordinary people can understand what conduct is prohibited. *Town Tobacconist v. Kimmelman,* 94 *N.J.* 85, 118 (1983). As the United States Supreme Court stated in *Grayned v. City of Rockford,* 408 *U.S.* 104, 108–09, 92 *S.Ct.* 2294, 2298–99, 33 *L.Ed.*2d 222, 227–28 (1972):

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.

Penal laws cannot be extended by implication or intendment. Where more than one reasonable interpretation may be made, or where the language is ambiguous—and the ambiguity is not manufactured by the defendant—the construction must be drawn against the state. *State v. Carbone, supra,* 38 *N.J.* at 23–24; Sutherland, *supra,* ¶ 59.03 at 6–7.

With these principles in mind, we focus our inquiry in this case on the meaning an ordinary citizen would ascribe to the word "volunteer" in *N.J.S.A.* 2C:29–3b(4). Certainly one "volunteers" information when he "blurts it out" or otherwise advances it without prompting. However, most people do not believe that one "volunteers" responses to a law-enforcement officer's inquiry. *See, e.g.,* The Random House Dictionary of the English Language 1600 (9th ed. 1983) (defining volunteer: "to offer [oneself or one's services] for some undertaking or purpose[;] ... to give, bestow, or perform without being asked ..."). In this case, the State reasons that because a person has a constitutional right to refuse to answer inquiries by law-enforcement officials, any responses to such inquiries are consensual and, therefore, "volunteered." We disagree.

Although the defendant was not constitutionally or statutorily compelled to answer the state trooper, an ordinary person stopped for a motor vehicle violation does not think he is "volunteering" answers to a law-enforcement officer's inquiries. Few persons under such circumstances think that they can refuse to answer. On the contrary, most believe that failure to respond will only lead to further involvement with the police officer. 3 W. LaFave, *Search & Seizure,* ¶ 9.2, at 52–55 (1978). *See generally United States v. Mendenhall,* 446 *U.S.* 544, 544–57, 100 *S.Ct.* 1870, 1871–73, 64 *L.Ed.*2d 497, 509–11 (1980) (recognizing the substantial assertion of governmental authority involved when a law-enforcement officer stops an automobile and the likelihood that a citizen would feel constrained to respond to the officer's questions).

In this case defendant was signaled by a state trooper to pull over and stop. His compliance with that signal cannot be characterized as a voluntary choice. Nor can his subsequent response to the officer's inquiry of his name. The fact that defendant had the choice to supply either a true or false name does not negate the practical imperative to respond that was created by the officer's inquiry. An ordinary citizen would not consider such an essentially mandated response to be "voluntary," and thus simply could not anticipate that *N.J.S.A.* 2C:29–3b(4) would apply in such a case. *See State v. Lee,* 96 *N.J.* 156, 166 (1984); *In re Suspension of DeMarco, supra,* 183 *N.J.* at 36. In this context, therefore, the word "volunteer" is too ambiguous to justify a conviction.

### III

When, as in this case, a statutory term is subject to more than one interpretation we look beyond its plain language to determine the legislature intent. *State v. Butler,* 89 *N.J.* 220, 227 (1982). Our inquiry into the historical context and legislative history of *N.J.S.A.* 2C:29–3b(4) firmly supports our narrow

construction of the word "volunteer" in that statute. *See State v. D'Addario,* 196 *N.J.Super.* 392 (Law Div.1984).

In 1981 the Legislature amended *N.J.S.A.* 2C:29-3 by enacting subsection b which prohibits hindering one's own apprehension, prosecution or conviction by, *inter alia,* "volunteer[ing] false information to a law enforcement officer." *N.J.S.A.* 2C:29-3b(4). This provision traces exactly the language of *N.J.S.A.* 2C:29-3a(7),[2] which prohibits hindering the apprehension, prosecution or conviction of another by "volunteer[ing] false information to a law enforcement officer."

In *Perez v. Pantasote, Inc.,* 95 *N.J.* 105, 116 (1984), we articulated "the general rule that a word or phrase should have the same meaning throughout the statute in the absence of a clear indication to the contrary." Just as "a comparative analysis of the language of a contemporaneous statute may, because of contrasting language applicable to similar subject matter, be indicative of an intent or purpose on the part of the Legislature to provide different treatment," *Malone v. Fender,* 80 *N.J.* 129, 136 (1979), citing *Smith v. Township of Hazlet,* 63 *N.J.* 523, 527 (1973), so is the use of the same language indicative of the Legislature's intent to provide the same treatment. Therefore, the Legislature's use of the identical phrase —"volunteers false information to a law enforcement officer"— in *N.J.S.A.* 2C:29-3a(7) and 3b(4) is strong proof that those provisions were meant to proscribe the same types of conduct.

The scant legislative history of the 1981 amendment also indicates that *N.J.S.A.* 2C:29-3a(7) and b(4) should be construed similarly. *See* Statement to Senate Committee Substitute for S.

---

[2]*N.J.S.A.* 2C:29-3a(7) provides

    a. A person commits an offense if, with purpose to hinder the apprehension, prosecution, conviction or punishment of another for an offense he:

*   *   *   *   *   *   *   *

    (7) Volunteers false information to a law enforcement officer.

1537 at 7 (Jan. 2, 1981) (explaining that the amendment merely broadened the prohibition against hindering another's apprehension, conviction, or prosecution to similarly prohibit hindering one's own apprehension, conviction or prosecution). Both sections derived from the former Code's prohibition against acting as an "accessory after the fact," *N.J.S.A.* 2A:85-2 (repealed Sept. 1, 1979). *See* II *Commentary: Final Report of The N.J. Criminal Law Revision Commission* (hereinafter *New Jersey Commentary*) 283 (1971); *N.J.S.A.* 2C:29-3 source note.[3] The new Code broke from the traditional accomplice theory, which had formed the basis of *N.J.S.A.* 2A:85-2, and followed the Model Penal Code, which bases liability for hindering prosecution on an obstruction of justice theory. *New Jersey Commentary, supra,* at 283; *N.J.S.A.* 2C:29-3 source note. The commentary to the parallel provision of the Model Penal Code explicitly states that "volunteering false information" does not include "giving ... false answers to inquiries initiated by the police." Model Penal Code § 242.3 commentary at 235 (1985). This provision

> proscribes only the borderline case of volunteered misinformation to the police which is not covered elsewhere. This provision is intended to reach those who take the initiative in throwing the police off the track.
>
> [*Id.*]

The Model Code Commentary explains that the exclusion of false answers to law enforcement officials from the scope of this section represented

> a delicate policy judgment, premised in part on the fear that a wider reach for this subsection would invite abusive charges by police against persons interviewed in the course of investigating crime. [*Id.*]

---

[3]The State argues without citation that the predecessor statute to *N.J.S.A.* 2C:29-3 was *N.J.S.A.* 2A:148-22.1 (repealed Sept. 1, 1979), which prohibited the "knowing and willful giving of false information to any law enforcement officer.... with respect to the commission of [an offense]." *N.J.S.A.* 2A:148-22.1, however, was the basis for the current prohibition on "False Reports to Law Enforcement Authorities." *See N.J.S.A.* 2C:28-4 source note.

The commentators noted that other sections of the Model Code were better suited to implement a "penal policy with respect to unsworn false statements to the police." *Id.*

The drafters of the New Jersey Penal Code similarly recognized the danger that might arise from a broad construction of the word "volunteer" in *N.J.S.A.* 2C:29–3:

> With regard to non-cooperation with police investigations, it should be borne in mind that the law provides means of compelling testimony under oath, and that a penal policy with respect to unsworn false statements to police has been laid down in other Sections of the Code with *advertence to the danger of abusive charges being brought by police against persons interviewed in the course of investigating crime. The borderline case of 'volunteered' misinformation to the police, dealt with in [N.J.S.A. 2C:29–3a(7)] would not be covered elsewhere and is intended to reach those who take the initiative in throwing the police off the tract.*
>
> [*New Jersey Commentary* at 285 (1971) (emphasis added).]

Even if it is less explicit than the commentary to the Model Code, the *New Jersey Commentary* is similarly unequivocal in its displacement of "unsworn false statements" made in response to law enforcement investigations from the scope of *N.J.S.A.* 2C:29–3. Both commentaries make it clear that the Legislature intended that sections other than *N.J.A.C.* 2C:29–3 prohibit false responses to questioning by law enforcement officers.

## IV

We do not hold that any response to a law-enforcement officer's inquiry cannot be a violation under this act or that an offense occurs only if the suspect speaks first. In part, whether an offense occurs depends on the nature and degree of misinformation. Just as a mere exculpatory "no" is not the type of information prohibited under the statute, neither is the mere misstatement of defendant's name. However, if after misinforming the police of his name the suspect proceeded, for example, to advise the police that he observed the perpetrator

and that he knew that he had returned to Florida, *N.J.S.A.* 2C:29–3b(4) would certainly be operable.

Moreover, we do not hold that *N.J.S.A.* 2C:29–3b(4) is vague or unconstitutional. We hold only that it is sufficiently ambiguous to preclude its application to this defendant in this context without a clarifying amendment. We acknowledge this decision may make police work more difficult (although we believe that some of the fears expressed by the State are unfounded).[4] Nevertheless, the Legislature's use of the exact same language in two sections of the same statute and the drafters' stated awareness of the danger of unwarranted prosecution by the police of people for giving false unsworn statements during a police investigation compel our conclusion that the legislature did not intend the word "volunteer" in *N.J.S.A.* 2C:29–3b(4) to have a different meaning and greater scope than the word "volunteer" in *N.J.S.A.* 2C:29–3a(7). Moreover, in light of the common assumptions about the meaning of the word "volunteer," we are convinced that the statute did not give defendant fair warning of its potential applicability in this case. Thus, we conclude that this defendant did not "volunteer," under *N.J.S.A.* 2C:29–3b(4), the false name he gave in response to the state trooper's inquiry. We therefore affirm the judgment of the Appellate Division.

CLIFFORD, Justice, dissenting.

If lawyers and judges would just learn to talk the way regular folks do, we would avoid a good many problems. Like, for instance, this case.

---

[4]The State warns that our decision may allow a criminal to "effectively hinder his own prosecution by lying to police, provided that he waits for the officer to initiate their verbal exchange." It seems unlikely that a criminal on the run would wait for an exchange with police. More likely he would try to avoid such contact, and if forced into it, would not correctly identify himself regardless of the applicability of *N.J.S.A.* 2C:29–3b(4). We are even less impressed by the State's fear that our construction of the statute will allow a criminal falsely to implicate innocent parties by giving their names instead of his own.

When asked his name, defendant was confronted with three choices: he could remain silent (I agree that maybe he did not know that, and that maybe, for those who put a high priority on not irritating law-enforcement people, silence is not such a good approach anyway); he could tell the trooper his name; or he could make up or "borrow" a name. Defendant took the last course: he gave false information. Nobody asked him to do that. Nobody extracted the phony name. Nobody coerced defendant into proffering a bogus identification—he *volunteered* it. He made up his answer. He lied. His intention was to avoid detection and to send the police off on a wild goose chase.

One need not be a lawyer or wordsmith or semanticist to understand that a statute proscribing the volunteering of false information to a law-enforcement officer is violated when Denny Valentin, wanted on a stolen vehicle charge, tells a state trooper that his name is Ramon Velez. I do not think the crowd down at the corner newsstand would have nearly the trouble with this simple, eminently sensible statute that this Court has.

I would reverse and remand to the trial court with an order to reinstate count two of the indictment.

*For affirmance*—Chief Justice WILENTZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*For reversal and remandment*—Justice CLIFFORD—1.