270 N.J. Super. 182 (1994)
636 A.2d 1061
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MICHAEL SOLTYS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 26, 1993.
Decided January 18, 1994.
*183 Before Judges STERN, KEEFE and NEWMAN.
Neil G. Duffy, argued the cause for appellant (Bellotti and Duffy, attorneys; Donald D. Morgan, Jr., on the letter brief).
Steven J. Kaflowitz, Assistant Prosecutor, argued the cause for respondent (Andrew K. Ruotolo, Jr., Union County Prosecutor, attorney; Mr. Kaflowitz of counsel and on the letter brief).
The opinion of the court was delivered by STERN, J.A.D.
We granted leave to appeal in order to decide whether the statutory entrapment defense embodied in N.J.S.A. 2C:2-12a applies to a conspiracy to commit a second degree aggravated assault. We conclude that it does, and remand for trial at which the defense may be presented.
Defendant was indicted for conspiring "with D.R., a police informant and unindicted co-conspirator known to the Grand Jury and known to the said Michael Soltys as `Danny,' to commit the crime of aggravated assault, second degree, in violation of N.J.S.A. 2C:12-1(b)(1) by soliciting the said D.R. (`Danny') to purposely or knowingly cause serious bodily injury to Christy Frank, contrary to the provisions of N.J.S.A. 2C:5-2." The *184 second count alleges the same crime with respect to Jerome Goldberg.[1]
For purposes of defendant's pretrial application for leave to present the entrapment defense[2] the parties agreed to the following facts, as stated in defendant's brief filed on this appeal:
On January 14, 1992 the defendant, Michael Soltys, was incarcerated in the Union County Jail for violation of a restraining order involving his former girlfriend Christy Frank. Soltys shared a cell with Fred McCabe while incarcerated. The two had been strangers until that time, but during the two days they were cellmates, Soltys discussed with McCabe his own prior relationship with Frank and his conviction that he had been harmed both emotionally and financially by her and her subsequent boyfriend, Jerry Goldberg.
On February 27, 1992, McCabe was released from jail and spoke to members of the Elizabeth Police Department that same day. As a result, on an unknown date, McCabe, now working as a police informant and wearing a concealed recording device, visited Soltys in the jail. He advised [Soltys] that he had located Jerry Goldberg, and that he had also located an individual who would be willing to kill Goldberg for money. During the course of the conversation Soltys indicated that he would like to see Goldberg and Frank hurt, though not killed, but that he had no money to pay for it to be arranged. Soltys ultimately agreed that he wanted the job done and would somehow come up with the money.
Subsequently, on March 25, 1992, undercover Essex County Police Officer Daniel Rinaldi visited Soltys at the jail, posing as a hit man who had been sent by McCabe. Soltys again replied that he had no money; Rinaldi replied that things could be worked out so that Soltys would pay him when he got out of jail, though no payment schedule was agreed upon. Rinaldi repeatedly offered to kill Goldberg, but Soltys insisted that he wanted Goldberg hurt, but not killed. Ultimately, a price of $2,500.00 was agreed upon.
On March 31, 1992, Soltys was taken to Union County Police Headquarters and interviewed. Soltys admitted that he had entered into an agreement with the man who had identified himself as "Danny" to have Christy Frank and Jerry Goldberg injured for a price of $2,500.00.
The State adds that a four paragraph stipulation was before the trial judge. It provided:

*185 Paragraph one, defendant never communicated any threats to either alleged victim concerning the incidents charged in this indictment. It is stipulated for purposes of this motion that defendant provided Fred McCabe with Christie Frank's father's phone number. Two, it is stipulated for purposes of this motion that threats made by Michael Soltys were communicated to Christie Frank by Fred McCabe and that Ms. Frank thereupon contacted the police.
Three, Detective Kominskas will testify at trial that he advised Jerry Goldberg of defendant's threats against him and that Goldberg did not previously know of these threats. Four, for purposes of motion, it is stipulated that both taped conversations took place and that Michael Soltys was speaking with Fred McCabe in the first instance and with Detective Rinaldi in the second instance.
As we understand the arguments and presentations before us, the stipulation is for purposes of the motion only. Defendant does not now seek a dismissal or a judgment of acquittal as a matter of law. The defense is to be decided by the trier of fact, N.J.S.A. 2C:2-12b, and the parties agree that the question before us is whether, as a matter of statutory law, the defense may be presented at a trial in which the actual proofs may vary to some degree.[3] Defendant has the burden of proving statutory entrapment. See State v. Rockholt, 96 N.J. 570, 581, 476 A.2d 1236 (1984); N.J.S.A. 2C:2-12b.
The trial judge determined that the defense was unavailable because defendant was indicted for conspiracy to commit aggravated assault and the statute precludes the defense where "causing or threatening bodily injury is an element of the offense charged." N.J.S.A. 2C:2-12c. A second degree aggravated assault involves the causing or attempt to cause serious bodily injury. N.J.S.A. 2C:12-1b(1).
N.J.S.A. 2C:2-12a provides that:
A public law enforcement official or a person engaged in cooperation with such an official or one acting as an agent of a public law enforcement official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an *186 offense, he induces or encourages and, as a direct result, causes another person to engage in conduct constituting such offense by either:
* * * * * * * *
(2) Employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.
N.J.S.A. 2C:2-12c further provides that:
The defense afforded by this section is unavailable when causing or threatening bodily injury is an element of the offense charged and the prosecution is based on conduct causing or threatening such injury to a person other than the person perpetrating the entrapment.
Defendant maintains that "causing or threatening bodily injury" is not an element of the crime of conspiracy with which he has been charged. He asserts that he has not been indicted for the substantive crime of aggravated assault and has been indicted only for conspiracy under N.J.S.A. 2C:5-2 which provides:
A person is guilty of conspiracy with another person or persons to commit a crime if with the purpose of promoting or facilitating its commission he:
(1) Agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
(2) Agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.
Defendant further notes that the essence of conspiracy is the illegal agreement and not the specific crime which is the object of the conspiracy. See State v. Carbone, 10 N.J. 329, 337, 91 A.2d 571 (1952) (holding that "[t]he offense depends on the unlawful agreement and not on the act which follows it"); see also e.g., Braverman v. United States, 317 U.S. 49, 54, 63 S.Ct. 99, 109, 87 L.Ed. 23, 28 (1942) ("[a] conspiracy is not the commission of the crime which it contemplates, and neither violates nor `arises under' the statute whose violation is its object"); State v. Bridges, 133 N.J. 447, 628 A.2d 270 (1993). Thus, defendant contends that because the "relevant parts of the indictment only allege conspiracy and no other crime," the trial judge erred in his conclusion that the entrapment defense provided for by N.J.S.A. 2C:2-12 was precluded by operation of subsection 12c of the statute.
*187 The Law Revision Commission Commentary with respect to the limitation embodied in N.J.S.A. 2C:2-12c (which reads as it did in the 1971 Final Report of the New Jersey Criminal Law Revision Commission) notes that:
[A] particular offense may be such that it could have no implied legislative exception because it is too "heinous or revolting." No reported entrapment case allows the defense where great physical damage has taken place. MPC T.D. 9, p. 23 (1959). The Code places such a limitation on the defense. Here, the offender should be punished and the deterrent effect to the conniving police would be to prosecute them. Id. at 23-24. [II Final Report of the New Jersey Criminal Law Revision Commission, Comment 9 at 78 (1971).]
The State contends that the New Jersey Penal Code Commission's explanation that N.J.S.A. 2C:2-12c is intended to preclude use of the entrapment defense to excuse "heinous or revolting" crimes and, therefore, should bar defendant's use of the entrapment defense here. The State further maintains that it is difficult to discern a distinction between one who inflicts serious bodily injury to another and one who hires a second person to commit such injury. To further support its position that the present case is the type of case to which the statutory entrapment defense was not meant to apply, the State cites the following from the ALI Model Penal Commentary to MPC 2.13(3) from which N.J.S.A. 2C:2-12c is derived verbatim:
No reported entrapment case has been found involving a criminal act in which great physical damage has taken place. Subsection (c) states a principle in support of this result. Giving the defense as a deterrent to police misconduct is justified on the grounds that no other effective method exists and that it is unfair to prosecute a person persuaded or deceived into criminality by the state. In cases of crimes in which causing or threatening bodily injury is an element of the offense and in which a person other than the entrapper is the one whose safety is threatened, however, much of the reason for the defense disappears. Public opinion would, in all probability, demand the punishment of the conniving or cooperating officers. The injured persons would have motivation to seek civil redress. It will not seem generally unfair to punish someone who has caused or threatened bodily injury to another, even though he was induced to his action by law enforcement officials. It is unlikely that a law-abiding person could be persuaded by any tactics to engage in such behavior, and a person who can be persuaded to cause such injury presents a danger that the public cannot safely disregard. [Model Penal Code and Commentaries, Part I, § 2.13, Comment 8 (ALI 1985)].
We agree with much of what the State says, but in the absence of an indictment for a substantive offense, even one based on defendant's *188 liability as a conspirator, see N.J.S.A. 2C:2-6a, b(4), defendant may assert the defense.
We start with the fundamental proposition that "penal statutes must be strictly construed against the State. State v. Churchdale Leasing, Inc., 115 N.J. 83, 102, 557 A.2d 277 (1989); State v. Valentin, 105 N.J. 14, 17-18, 519 A.2d 322 (1987); In re Suspension of DeMarco, 83 N.J. 25, 36 414 A.2d 1339 (1980)." State v. Gonzalez, 241 N.J. Super. 92, 103, 574 A.2d 487 (App.Div. 1990) (Skillman, J.A.D. dissenting), rev. on dissenting opinion, 123 N.J. 462, 588 A.2d 816 (1991). Moreover, "all doubts as to meaning of a penal statute should be resolved in favor of the defendant." State v. Maguire, 176 N.J. Super. 164, 169, 422 A.2d 466 (Resent.Panel 1979) rev'd on other grounds 84 N.J. 508, 423 A.2d 294 (1980), citing State v. Brenner, 132 N.J.L. 607, 611, 41 A.2d 532 (E. & A. 1945). Thus, "[w]here more than one reasonable interpretation may be made, or where the language is ambiguous and the ambiguity is not manufactured by the defendant  the construction must be drawn against the state." State v. Valentin, 105 N.J. 14, 18, 519 A.2d 322 (1987), quoted in State v. Gonzalez, supra, 241 N.J. Super. at 103, 574 A.2d 487. These maxims require us to hold for defendant who literally was indicted for no crime for which "causing or threatening a bodily injury is an element of the offense charged," and where the prosecution is not "based on conduct causing or threatening such injury."[4] Rather defendant was indicted for "agreeing" with another to aid in the *189 planning and commission of such a crime. The essence of a conspiracy is the agreement, the "object need not be achieved for a conviction of conspiracy to be valid...." Cannel, Criminal Code Annotated, Comment N.J.S.A. 2C:5-2 at 206 (1993). We recognize that here the conspiracy had to include an agreement to cause, or attempt to cause, serious bodily injury, but such an agreement itself constitutes neither a "bodily injury" nor a "threat" thereof.[5]
Our legislature has in several contexts recognized the difference between conspiracies and substantive crimes. The elements of a conspiracy by their very nature do not require the completion of a criminal act, as opposed to an agreement to promote or facilitate the commission of one. See N.J.S.A. 2C:5-2. By definition, conspiracy is a lesser included offense of the crime which constitutes the object of the conspiracy, and the conspiracy merges into the completed act. See N.J.S.A. 2C:1-8b, d. In fact, the legislature *190 has concluded that conspiracy is an "inchoate crime" embodied in subtitle one of the Code of Criminal Justice, N.J.S.A. 2C:5-2, and has not included it among the substantive offenses defined in subtitle two, N.J.S.A. 2C:11-1 thru 2C:41-62.
Moreover, while crimes against the person are the most serious crimes, the legislature has provided that generally conspiracies to commit first degree crimes do not carry the same classification and are only crimes of the second degree. See N.J.S.A. 2C:5-4a. The legislature has also recognized that persons who conspire to cause or threaten bodily injury can renounce their criminal purpose. See N.J.S.A. 2C:5-2e.
Thus, while one can be unlawfully persuaded to agree to participate in a crime designed to injure another, it is quite another thing to undertake the additional acts and to do it. Hence, even though no "overt act" is necessary to conspire to commit a first or second degree crime, see N.J.S.A. 2C:5-2d, there must be more than an agreement to be convicted of a substantive offense. And while defendant, as an accomplice or conspirator (as well as a principal), can be liable for the conduct of another person who commits the substantive offense, see N.J.S.A. 2C:2-6b(3) & (4); see also, e.g.; State v. Bridges, supra, until such an act is actually committed defendant can assert an entrapment defense. On the other hand, there can be no justification by entrapment once the plan is culminated and an offense involving bodily injury or the threat thereof occurs. If defendant participates in such a crime as a conspirator or otherwise, he cannot assert an entrapment defense.
Here defendant is charged with no substantive offense. He is not charged with an attempt to cause serious bodily injury or any other violation of the statute which proscribes second degree aggravated assault, N.J.S.A. 2C:12-1b(1). Nor is he charged with the commission of any other degree of assault. See N.J.S.A. 2C:12-1. He was indicted only for a conspiracy, and "causing or threatening a bodily injury" is not an element of conspiracy. Accordingly, the entrapment defense may be presented.
*191 The order under review is reversed, and the matter is remanded for trial.
NOTES
[1] A third count charging criminal contempt, N.J.S.A. 2C:29-9, for disobeying a domestic violence restraining order, is not involved on this appeal.
[2] The facts were stipulated for purposes of the pretrial hearing, and the parties have agreed that it was prudent to resolve the issue before openings and commencement of proofs. See R. 3:13-1(b). No question regarding constitutional due process entrapment is raised before us (see, generally, State v. Johnson, 127 N.J. 458, 606 A.2d 315 (1992)), and we do not address that subject.
[3] We are not asked to pass upon the propriety of such a stipulation and do not consider any procedural question regarding how the defense should be raised or about consideration of its admissibility at trial.
[4] In State v. Fletcher, 792 S.W.2d 395, 397-98 (Ct.App.Mo. 1990), the Court of Appeals of Missouri concluded that the defense of entrapment should not have been permitted in a prosecution for driving while intoxicated because, while it would have been relevant under Model Penal Code terminology, the Missouri legislature broadened the limitation so that the entrapment defense "is not available in a crime which involves placing in danger of personal injury a person other than the person perpetrating the entrapment." Compare the approach of the Utah Supreme Court in State v. Colonna, 766 P.2d 1062, 1065 (1988), which held that the substantive crime of aggravated or armed robbery "includes by implication the existence of a threat of injury" and that "the commission of robbery using a firearm necessarily implies a threat of bodily injury to the victim."
[5] Of interest is the current model jury charge on conspiracy, which reads, in part:

A conspiracy to commit a crime is a separate and distinct crime from the actual commission of the substantive offense. In other words, a defendant may be found guilty of the crime of conspiracy regardless of any guilt or innocence as to the (specify substance crime). In order for you to find the defendant guilty of the crime of conspiracy, the State need not prove the defendant actually committed the crime of ____; rather, the State must prove beyond a reasonable doubt that the defendant (whose guilt you are considering) with the purpose of promoting or facilitating the commission of the crime of ____.
(SELECT AS APPROPRIATE)
(1) Agreed with at least one other person referred to in the indictment that one of them would commit [, attempt or solicit another to commit] the crime
(OR)
(2) Agreed with at least one other person referred to in the indictment to aid (him/her) [or them] in committing or in planning to commit [attempt or solicit another to commit] the crime.
The State does not have to prove any element of the crime of ____ in order for you to find the defendant guilty of conspiracy. However, it is necessary for you to know the essential elements of that crime so you may determine whether or not the State has proven a conspiracy to commit the crime of ____.