765 A.2d 765 (2001)
336 N.J. Super. 541
STATE of New Jersey, Plaintiff-Appellant,
v.
Phillip MARCHIANI and Lillian Buonfiglio Marchiani, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted January 8, 2001.
Decided February 2, 2001.
*766 John J. Farmer, Jr., Attorney General, for appellant (Meredith A. Cote, Deputy Attorney General, of counsel and on the brief).
Jacobs & Barbone, Atlantic City, for respondents (Louis M. Barbone, on the brief).
Before Judges HAVEY, WEFING and LEFELT.
The opinion of the court was delivered by LEFELT, J.A.D.
An Atlantic County grand jury indicted defendants Phillip Marchiani and Lillian Buonfiglio Marchiani for selling items bearing counterfeit trademarks, contrary to the Trademark Counterfeiting Act, N.J.S.A. 2C:21-32, ("TCA"). The Atlantic County Assignment Judge concluded that the TCA only protected defendants' customers from deceit or fraud and did not protect the trademark owners or any other persons. Because defendants' customers knew they were not buying name-brand goods, the judge found the TCA was not violated, and dismissed the indictment, pursuant to N.J.S.A. 2C:2-11, the de minimis statute. The State appeals from the dismissal. We conclude that the TCA protects not only defendants' customers but also other persons, including the trademark owners and future consumers of the counterfeit goods. Consequently, we reverse the dismissal, reinstate the indictment, and remand for further proceedings.
Defendants were selling so called "knock-off" merchandise from their Margate home. "Knock-offs" are consumer goods with counterfeit trademarks. Defendants were selling items bearing such counterfeit trademarks as Movado, Nautica, Ralph Lauren, Adidas, Donna Karan, Nike, Pokeman, Weebok and Tommy Hilfiger.
Defendants admit they sold merchandise with counterfeit trademarks, but deny they deceived their customers. During the investigation of defendants, for example, Mr. *767 Marchiani told an undercover investigator that some of the items for sale were fake, but because the false trademark insignias were on good-quality clothing, the final products were better than the authentic goods. The State agrees that defendants' customers knew they were not buying original name-brand goods, but argues that defendants intentionally defrauded and deceived the holders of legitimate trademarks together with future consumers of the counterfeit goods.
Defendants argue, in essence, that the Legislature only intended the TCA to protect the defendants' immediate customers, and the Assignment Judge accepted this argument. He dismissed the indictment because the defendants did not "deceive or defraud, or intend to deceive or defraud, the purchasers of the merchandise," which according to the judge, was "the harm the legislature sought to prevent in enacting" the TCA.
Trademarks not only allow the public to distinguish between manufacturers, but they also provide incentives for manufacturers to produce quality goods. See U.S. International Trade Commission, The Effects of Foreign Product Counterfeiting on United States Industry, 82 Pat. & Trademark Rev. 471, 483 (1984). To the extent the mark is unprotected, the owner's interest in producing quality goods is undercut to the detriment of the public generally. Any construction of the TCA that allows persons to traffic legally in counterfeit trademarks also risks fostering the proliferation of "substandard and sometimes dangerous" goods. Bagger Bill Making Trademark Counterfeiting a Crime Approved by Assembly, Assembly Republican News, Feb. 20, 1997. There are thus significant public interests involved in proper interpretation of the TCA.
The TCA on its face is quite broad and provides that:
[a] person commits the offense of counterfeiting who, with the intent to deceive or defraud some other person, knowingly manufactures, uses, displays, advertises, distributes, offers for sale, sells, or possesses with intent to sell or distribute within, or in conjunction with commercial activities within New Jersey, any item, or services, bearing, or identified by, a counterfeit mark.
[N.J.S.A. 2C:21-32c (emphasis added).]
Considering the statutory language, a defendant who sells "knock-off" goods commits a crime when, with "intent to deceive or defraud some other person," he or she sells any item bearing "a counterfeit mark." The State thus specifically argues that the phrase "some other person" applies not only to consumers or potential future consumers, but also to the owners whose trademarks have been counterfeited.
We are of course aware that criminal statutes must be strictly construed so that "`[n]o one shall be punished for a crime unless both that crime and its punishment are clearly set forth in positive laws.'" State v. Valentin, 105 N.J. 14, 18, 519 A.2d 322 (1987) (quoting In re Suspension of DeMarco, 83 N.J. 25, 36, 414 A.2d 1339 (1980)). "Penal laws cannot be extended by implication or intendment. Where more than one reasonable interpretation may be made, or where the language is ambiguous ... the construction must be drawn against the state." Valentin, supra, 105 N.J. at 18, 519 A.2d 322.
When, as in this case, however, the statute is broadly protective to accomplish its legislative purpose, it would be wrong for the judiciary to limit the statute's intended application by narrow construction. We must read statutes in relation to the evil or mischief sought to be suppressed. State v. Brenner, 132 N.J.L. 607, 611, 41 A.2d 532 (E. & A.1945). A construction of a penal statute that would unduly hinder the object and purpose of the law is not favored. State v. Rucker, 46 N.J.Super. 162, 167-68, 134 A.2d 409 (App. Div.), certif. denied, 25 N.J. 102, 135 A.2d 59 (1957); State v. Gratale Bros., Inc., *768 26 N.J.Super. 581, 585, 98 A.2d 591 (App. Div.1953); State v. Cooper, 140 N.J.Super. 28, 34, 354 A.2d 713 (Law Div.1976), rev'd on other grounds, 165 N.J.Super. 57, 397 A.2d 702 (App.Div.), certif. dismissed, 81 N.J. 261, 405 A.2d 806 (1979); State v. Hand, 71 N.J.L. 137, 141, 58 A. 641 (Sup. Ct.1904).
It is true, as the Assignment Judge pointed out, that the Legislature could have drafted a statute that specifically protects the mark owner. The judge noted that in N.J.S.A. 24:6D-1, for example, which addresses counterfeiting and misrepresentation of drugs, cosmetics and related devices, the Legislature provided that the mere sale of a drug or cosmetic with a false trademark without the consent of the holder of the trademark subjects the offender to criminal penalties. N.J.S.A. 24:6D-2.
In construing a statute, however, our first obligation is to consider the statute's plain meaning. State v. Hoffman, 149 N.J. 564, 578, 695 A.2d 236 (1997). On its face, and by its plain meaning, the statute provides that "some other person" means any person other than defendants. The defendants nevertheless argue that the Legislature could not have meant to include trademark owners within the specified "some other person." If we were to consider the phrase ambiguous, then we would search for the Legislature's intent. Ibid. When a statute's plain meaning is not evident on its face, "[e]xtrinsic aids, such as legislative history, committee reports, and contemporaneous construction, may be used to help resolve any ambiguity and to ascertain the true intent of the Legislature." Ibid.
The legislative history surrounding the TCA provides strong indications that the Legislature intended to include the trademark owner within the phrase "some other person," and to punish those who seek to profit personally by stealing the trademarks of others. For example, Assemblyman Richard H. Bagger, one of the initial sponsors of the bill, stated that the statute "will protect the public from the sale of counterfeit products.... It will also ensure that owners of property receive a return on their creative work and investment." Bagger Bill Making Trademark Counterfeiting a Crime Approved by Assembly, Assembly Republican News, Feb. 20, 1997. Furthermore, Assemblyman Neil M. Cohen, a co-sponsor of the bill, stated:
These counterfeiters are not only stealing from the manufacturer of a trademark product, but they are also preying upon unwitting customers who are looking for a bargain.... Consumers should not have to worry about buying a cheap product knock-off instead of the genuine article.
When a trademark is granted, the government is recognizing that a mark is the unique and original property of its creator.... This kind of property must be protected against theft as thoroughly as someone's pocketbook or car.

Senate Passes Cohen Bill to Combat Trademark Counterfeiting, News from the Assembly Democrats, Jan. 27, 1997.
This statement implies that the TCA was intended to protect a trademark as "the unique and original property of its creator" and "must be protected against theft."
Finally, Senator John Lynch, a Senate co-sponsor of the bill stated:
Companies spend thousands of dollars to create and register trademarks.... Those who would steal these trademarks and profit from them in effect steal money from the company. The laws should punish trademark-stealers just as we penalize those who steal products or funds....
This bill will ... protect consumers, support honest businesses and increase state tax revenues by weeding out fly-by-night escape artists who would evade the laws designed to protect citizens and merchants alike.

Lynch Bill Banning Trademark Counterfeiting Advances, News from the Senate Democrats, Apr. 4, 1997. *769 There is thus support in the legislative history for the proposition that the statute was intended to protect the owners of trademarks as well as consumers.
There is also indication in the statute itself of the legislative intent to include the trademark owner within its protective sweep. For example, the TCA provides that the offense of counterfeiting can be committed when a defendant "manufactures... a counterfeit mark." In that instance, before any sale or distribution, one of the persons intended to be deceived or defrauded by manufacturing a counterfeit mark is the original mark owner.
Moreover, N.J.S.A. 56:3-13.16 authorizes the owner of a trademark to seek a civil remedy, including injunctive and monetary relief, from persons trafficking or attempting to traffic in counterfeit marks. The TCA specifically provides that "Conviction for an offense under this act does not preclude the defendant's liability for the civil remedy." N.J.S.A. 2C:21-32g. If a defendant under the TCA could only violate the rights of consumers, there would be no need for any provision assuring that an aggrieved mark owner would still have the civil remedy available. Thus, the reference to an owner's continuing remedy in N.J.S.A. 2C:21-32g is further evidence that the Legislature intended the TCA to protect the mark owner as well as consumers. Providing both civil and criminal enforcement mechanisms is also evidence of the importance the Legislature attached to stopping the trafficking in bogus trademarks.
In concluding that the TCA only protected defendants' customers, the Assignment Judge believed it was significant that, unlike the TCA, the civil enforcement statute defined both "owner" and "person." N.J.S.A. 56:3-13.1a. The civil statute authorizes a trademark owner to sue a defendant for using a mark "without consent of the owner." N.J.S.A. 56:3-13.16a. When the TCA was enacted, the Legislature knew that the civil statute, which had been enacted before the TCA, distinguished "owners" from "persons." The judge concluded that this supported his belief that the Legislature did not intend the phrase "some other person" to include the trademark owner. He explained that "[t]o conclude otherwise, that the owner of a trademark is encompassed in the definition of `person' in the criminal statute, while it is not so included in the civil statute, would result in inconsistent definitions of `person' in the two distinct statutes governing the same subject matter."
Our problem with this rationale is that while the Legislature did not define "person" in the TCA, it did define person in its general enactments and provided that "In this code, unless a different meaning plainly is required ... `[p]erson' ... include[s] any natural person and, where relevant, a corporation or an unincorporated association." N.J.S.A. 2C:1-14g. This definition is similar to the "person" definition provided in the civil statute, and it is reasonable to conclude that when the Legislature enacted the TCA, it expected that the general definition of "person" would pertain. Because this definition included "a corporation or an unincorporated association," it would protect the owners of trademarks and, therefore, no separate definition of "owner" was required.
Also, according to defendants, because they disclosed the fraud to their customers, they can continue to sell counterfeit goods without fearing criminal prosecution under the TCA. However, there are other persons besides defendants' customers and the trademark owners who can be deceived by defendants' actions. The TCA specifically precludes defendants trafficking in counterfeit trademarks from defrauding or deceiving "any other person." The Legislative language is thus broad enough to include future consumers within its protection.
"Once a product is injected into commerce, there is no bar to confusion, mistake, or deception occurring at some future point in time." Rolex Watch U.S.A., Inc. v. Canner, 645 F.Supp. 484, 493 *770 (S.D.Fla.1986). The fact that defendants disclosed the counterfeit mark to their immediate customers is little solace to any future consumers.
No disclaimer followed the goods into the marketplace. Thus, the general public would have no further notice from defendants that the products were not genuine. Stern v. State, 739 So.2d 1203, 1207 (Fla. Dist.Ct.App.1999). Any member of the public who may later encounter the counterfeit goods may be deceived by defendants' placing these bogus goods into commerce. U.S. v. Torkington, 812 F.2d 1347, 1352 (11th Cir.1987). Besides the mark owner and the immediate customer, therefore, we conclude that the TCA also seeks to protect future consumers from deception and fraud.
Accordingly, we reject the extremely narrow construction urged by defendant, and hold that the Legislature intended the TCA to protect any person, corporation or association from a defendant's deceit or fraud so that the original trademark would be thoroughly protected. "[S]ome other person" under the TCA includes not only the immediate customer, but also the trademark owner and others, including prospective future consumers of the goods.
We conclude, therefore, that the TCA covers defendants' conduct, but there are factual disputes present relating to whether defendants intended to deceive the trademark owners and prospective future consumers. Thus, the indictment must be reinstated, and the matter remanded for further proceedings.
Reversed and remanded.