811 A.2d 439

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. S.R., DEFENDANT–APPELLANT.

Argued October 22, 2002—Decided December 12, 2002.

Susan Brody, Assistant Deputy Public Defender, argued the cause for appellant (*Yvonne Smith Segars*, Public Defender, attorney).

*William Scharfenberg*, Assistant Prosecutor, argued the cause for respondent (*Thomas F. Kelaher*, Ocean County Prosecutor,

attorney; *Patricia S. Toreki,* Assistant Prosecutor, on the letter in lieu of brief).

*Frank Muroski,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey (*Peter C. Harvey,* Acting Attorney General, attorney).

The opinion of the Court was delivered by

COLEMAN, J.

In this appeal we must decide whether a defendant's failure to pay a $60 Violent Crimes Compensation Board (VCCB) assessment prior to the effective date of Megan's Law, but after he was discharged from probation, constitutes an "other form of community supervision" requiring that he register as a sex offender pursuant to *N.J.S.A.* 2C:7–2b(2). To answer that question, we must interpret the meaning of the phrase "other form of community supervision" as used in *N.J.S.A.* 2C:7–2b(2). The Appellate Division concluded that "the Legislature intended 'other form of community supervision' to [include] ... [t]he payment of the VCCB penalty." We disagree and reverse. We hold that the Legislature intended the phrase "other form of community supervision" to mean some kind of critical monitoring by the parole or probation authorities beyond merely serving as a "collection agency" to permit a defendant to pay a fine or assessment in installments.

I.

On February 28, 1991, defendant pled guilty to two counts of fourth-degree sexual contact involving child victims. *N.J.S.A.* 2C:14–3b. On July 26, 1991, he was sentenced to concurrent probationary terms of three years. When Megan's Law became effective on October 31, 1994, all of the terms and conditions of defendant's probationary sentence had been met, except for the payment of a $60 VCCB penalty. Defendant was discharged from probation in May 1994, but the probation department was required to collect the VCCB penalty. Because the $60 assessment

had not been paid within a year after being discharged from probation, contempt charges were instituted against defendant. The contempt proceedings were adjourned until October 16, 1995, at which time the Morris County Probation Department noted in its records that defendant was "discharged complete[ly]" and his "financial obligations fulfilled."

In April 1999, defendant was indicted for failure to register under Megan's Law, *N.J.S.A.* 2C:7–2b. That statute requires registration by offenders who, among other reasons, have been convicted of sex offenses or other predatory acts against minors and are "serving a sentence of incarceration, probation, parole or other form of community supervision as a result of the offense ... on the effective date of this act." *N.J.S.A.* 2C:7–2b(2). In June 1999, defendant pled guilty to failing to register under Megan's Law. Prior to sentencing, defendant filed a motion to vacate his guilty plea and to dismiss the indictment. Defendant argued that he was not subject to the registration requirement because he had been discharged from probation on May 27, 1994 and, thus, was not serving a sentence on the effective date of Megan's Law. The State, on the other hand, argued that when Megan's Law became effective, defendant was still under a "form of community supervision" because he had not paid his VCCB penalty.

The trial court denied defendant's application to withdraw his guilty plea. In focusing on the untimely payment of the VCCB penalty, the court stated:

> The [L]egislature says it has to be paid, and until it's paid, he's subject to probation. There's an account still open and there's a probation officer who has to supervise it. And my reading of the statute is, he's still under supervision as of the date effective [sic] of Megan's Law.
>
> . . . .
>
> [The Legislature made] Megan's Law, as broad as they could, to reach as far as they could, to get as many Megan's Law type offenders, sex offenders out there under the blanket of the Megan's Law registration, and had he completed satisfactor[ily] his probation and fines and costs, we wouldn't be here today.

The trial court sentenced defendant to a two-year probationary term and imposed the requisite fines and penalties.

Defendant appealed and the Appellate Division affirmed in an unpublished opinion. The Appellate Division reasoned that Megan's Law is a "remedial statute," (citing *Doe v. Poritz*, 142 *N.J.* 1, 73, 662 *A.*2d 367 (1995)), that "should be broadly interpreted to advance" its purpose of "protect[ing] the community from the dangers of recidivism by sexual offenders." (quoting *In re C.A.*, 146 *N.J.* 71, 80, 679 *A.*2d 1153 (1996)). The Appellate Division concluded that "the Legislature intended 'other form of community service' to encompass all sentencing provisions beyond incarceration, probation, and parole and thereby to extend the reach of the registration provisions to their utmost limits. The payment of the VCCB penalty was clearly a part of the criminal sentence." (citing *State v. Kemprowski*, 265 *N.J.Super.* 471, 473, 627 *A.*2d 1151 (App.Div.1993); *State v. Joseph*, 238 *N.J.Super.* 219, 222–23, 569 *A.*2d 819 (App.Div.1990)). We granted defendant's petition for certification, 171 *N.J.* 445, 794 *A.*2d 184 (2002), and now reverse.

## II.

### A.

Defendant argues that the Legislature intended "other form of community supervision" to mean some type of critical monitoring carried out by a State entity, such as the probation or parole authorities, to ensure that the individual being supervised is "lead[ing] a law-abiding life," *N.J.S.A.* 2C:45–1a. Defendant contends that "since no aspect of [his] behavior was being monitored after his discharge from probation other than his payment of his VCCB penalty, he was not under community supervision from that point onward." Accordingly, he argues that this Court should hold that he did not fall within the meaning of *N.J.S.A.* 2C:7–2b(2) and thus was not subject to the registration provisions of Megan's Law.

The State argues that the VCCB penalty was part of defendant's sentence and thus was a "form of community supervision" included under *N.J.S.A.* 2C:7–2b(2). It contends that the Legisla-

ture obviously intended that phrase "as a catch-all provision" to cover any situation not specifically listed in the statute, such as defendant's. The State contends that this "catch-all provision" is consistent with the Legislature's broad "inten[t] to address all sexual offenders convicted of a predicate offense."

### B.

Megan's Law, *N.J.S.A.* 2C:7–1 to –19, established a system of registration and community notification for "sex offenders and offenders who commit other predatory acts against children." *N.J.S.A.* 2C:7–1. Pertinent to this case, it provides that a sex offense includes

[a] conviction, adjudication of delinquency, or acquittal by reason of insanity for . . . criminal sexual contact pursuant to *N.J.S.* 2C:14–3b. [sic] if the victim is a minor . . . if the conviction, adjudication of delinquency or acquittal by reason of insanity is entered on or after the effective date of this act or *the offender is serving* a sentence of incarceration, probation, parole or *other form of community supervision as a result of the offense* or is confined following acquittal by reason of insanity or as a result of civil commitment on the effective date of this act[.]
[*N.J.S.A.* 2C:7–2b(2) (emphasis added).]

Insofar as adult convictions are concerned, the pertinent language in *N.J.S.A.* 2C:7–2b(2) refers to convictions entered on or after October 31, 1994, and to those adult sex offenders "serving a sentence of incarceration, probation, parole or other form of community supervision as a result of the offense . . . on the effective date of this act." *Ibid.* That language identifies four types of adult sentencing dispositions established in the New Jersey Code of Criminal Justice (Code), *N.J.S.A.* 2C:1–1 to 2C:104–9. The first category is incarceration. The Code's authorized incarcerations as dispositions are found in *N.J.S.A.* 2C:43–2b(2) (split sentences), –2b(3) (terms of imprisonment), –2b(4) (imprisonment, fine and restitution), and –2b(7) (imprisonment at night or on weekends). The second type of disposition is probation authorized in *N.J.S.A.* 2C:43–2b(2) and –2b(4). The third category refers to persons released from imprisonment and placed on parole pursuant to the Parole Act of 1979, *N.J.S.A.* 30:4–123.45 to –123.76.

The fourth and final type of adult sentencing disposition covered by Megan's Law is identified as "other form of community supervision." The Code's dispositions that cover that category are found in *N.J.S.A.* 2C:43–2b, where imposition of sentence has been suspended and the person is supervised pursuant to *N.J.S.A.* 2C:45–1a and *N.J.S.A.* 2C:43–2b(5) (community supervision or community-related service with supervision) and –2b(6) (placement in a halfway house or "residential facility in the community"). When a court suspends the imposition of a sentence, it shall attach reasonable conditions authorized by *N.J.S.A.* 2C:45–1b, *State v. Rivera*, 124 *N.J.* 122, 125, 590 *A.*2d 238 (1991), which may include probationary supervision. *N.J.S.A.* 2C:45–1b(10). "The difference between suspension and probation is that probation places the defendant under the supervision of the County Probation Office and normally carries a requirement to report to that office periodically whereas suspension is ordinarily without such supervision." Cannel, *New Jersey Criminal Code Annotated*, comment 5 on *N.J.S.A.* 2C:43–2 (2002). *See N.J.S.A.* 2C:45–1b(10); *State v. Dove*, 202 *N.J.Super.* 540, 542 n. 2, 495 *A.*2d 487 (Law Div.1985). Therefore, because Megan's Law specifically refers to probation, an authorized sentencing disposition, a probationary sentence ordinarily is not an "other form of community supervision."

Although persons placed into the Pretrial Intervention Program pursuant to *N.J.S.A.* 2C:43–12 to –22 receive community supervision, such supervision does not fall within the scope of Megan's Law "other form of community supervision" because there has been no conviction, adjudication of delinquency, or finding of not guilty by reason of insanity, a precondition to Megan's Law registration requirements. *See N.J.S.A.* 2C:7–2b(2). In other words, Megan's Law registration requirements do not apply to pretrial diversionary programs because they are not sentencing dispositions. In contrast, Megan's Law registration requirements do apply to persons placed in the Intensive Supervision Program, *R.* 3:21–10(b)(5), –10(e), a post-incarceration program of judicial intervention and diversion back to the community. *N.J.S.A.*

2C:43–11. *See State v. Cannon,* 128 *N.J.* 546, 549, 608 *A.*2d 341 (1992).

Arguably, the indictment in this case is irreconcilable with the Code. The Code's authorized disposition that the trial court applied was the original three-year probationary sentence imposed on July 26, 1991. That term of probation was authorized by *N.J.S.A.* 2C:43–2b(2). Once defendant was discharged from probation on May 27, 1994, he was no longer supervised by the probation department. Defendant's only outstanding obligation at that point was to pay his $60 VCCB penalty. As will be seen later, after defendant was discharged from probation on May 27, 1994, the role of the probation department was similar to that of a collection agency. Thus, by operation of law, when the three-year probationary term ended on May 27, 1994, by order of the court, or on July 25, 1994 at the end of three years, defendant was "relieved of any obligations imposed by the order of the court and shall have satisfied his sentence," *N.J.S.A.* 2C:45–2c, except for the payment of the VCCB penalty. *See N.J.S.A.* 2C:45–3a (requiring an application to extend probation to pay a fine to be made *before* the probationary term ends); *R.* 3:21–7(c).

When the State indicted defendant for failing to register under Megan's Law, the State's approach to this case seems to have presupposed that the sentencing disposition in 1991 was to release defendant under community supervision pursuant to *N.J.S.A.* 2C:43–2b(5) rather than placing him on probation pursuant to *N.J.S.A.* 2C:43–2b(2). Subsection 2b(5) authorized the court "[t]o release [defendant] under supervision in the community or to require the performance of community-related service." *Ibid.* Because the court clearly sentenced defendant to probation on July 26, 1991 pursuant to subsection 2b(2) and did not make a disposition pursuant to subsection 2b(5), defendant's three-year probationary sentence ended before Megan's Law became effective. Under the above legal and factual analysis, the indictment was improper, as a matter of law. Nonetheless, we will address the State's assertion that nonpayment of the VCCB penalty before

October 31, 1994 meant that defendant was still under a "form of community supervision" when Megan's Law became effective.

## C.

"As a general rule of statutory construction, we look first to the language of the statute. If the statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to divine the Legislature's intent." *State v. Butler*, 89 *N.J.* 220, 226, 445 *A.*2d 399 (1982) (citations omitted). But if the statute is not clear and unambiguous on its face, "we consider sources other than the literal words of the statute to guide our interpretive task. . . . '[T]he court considers extrinsic factors, such as the statute's purpose, legislative history, and statutory context to ascertain the legislature's intent.'" *Aponte–Correa v. Allstate Ins. Co.*, 162 *N.J.* 318, 323, 744 *A.*2d 175 (2000)(quoting *Township of Pennsauken v. Schad*, 160 *N.J.* 156, 170, 733 *A.*2d 1159 (1999)); *State v. McQuaid*, 147 *N.J.* 464, 480–82, 688 *A.*2d 584 (1997). The policy behind the statute also should be considered. *County of Monmouth v. Wissell*, 68 *N.J.* 35, 43–44, 342 *A.*2d 199 (1975).

We find that the disputed language of Megan's Law is clear and unambiguous. Since the Legislature did not attach any special meaning to the word "supervision," it should be given its ordinary meaning which is defined as "a critical watching and directing." *Webster's New Collegiate Dictionary* (1981). Thus, we find that the Legislature intended "other form of community supervision" to mean a critical watching and directing of an individual's behavior by a community official or a probation department. Clearly, the phrase means something more than the mere collection of a VCCB penalty from an individual discharged from probation. Here, although the probation department was required to collect the $60 VCCB assessment from defendant pursuant to *N.J.S.A.* 2C:46–4a(1), we find that while the probation department was serving merely as the collection arm of the court,

no one was critically watching or directing defendant's behavior after his discharge from probation.

When Megan's Law became effective, defendant's criminal status was virtually identical to a person who was sentenced to pay a fine pursuant to *N.J.S.A.* 2C:43–2b(1). Here, the VCCB penalty was imposed pursuant to *N.J.S.A.* 2C:43–3.1a(2)(a), which directs that a person convicted of "any crime not resulting in the injury or death of any other person shall be assessed" a VCCB penalty at the time of sentencing. Such penalties "shall be collected as provided in ... [*N.J.S.A.* 2C:46–4]." *N.J.S.A.* 2C:43–3.1a(3). VCCB penalties imposed by the Superior Court on defendants sentenced to noncustodial terms are collected by the county probation department. *N.J.S.A.* 2C:46–4a(1). Where, as here, a defendant assessed a VCCB penalty fails to pay it, the county probation department is authorized to collect the assessment and on motion of the prosecutor, may have the defendant brought before the sentencing court to explain his or her default. *N.J.S.A.* 2C:46–2a.. The court may impose a variety of remedies on the defaulting defendant. *N.J.S.A.* 2C:46–2a(1) and (2). One such remedy here is that the court could have extended defendant's probation in May 1994. Rather than extend probation, the court discharged defendant from probation but nonetheless required him to pay the $60 VCCB penalty through probation.

Although it is clear from the Code that the Legislature intended the collection of VCCB penalties to be enforced seriously, we find that the process by which they are collected does not require the same type of strict supervision associated with the probation or parole of a defendant. Here, because defendant failed to pay the $60 VCCB penalty, he was held in contempt of court and ordered to pay the penalty. That remedy was completely unrelated to the probation he served for the Megan's Law offense. Moreover, as opposed to a violation of probation or parole, defendant's failure to pay the VCCB penalty was no reflection of his tendency to commit another Megan's Law offense, and thus was unrelated to the

Legislature's goal of monitoring the behavior of sex offenders in order to protect the public.

Several provisions of Megan's Law and other Code provisions further support our conclusion that the Legislature intended the phrase "other form of community supervision" to involve a form of critical monitoring by community or probation authorities. For example, Megan's Law, *N.J.S.A.* 2C:7–2c(1), provides:

A person who is required to register and who is under supervision in the community on probation, parole, furlough, work release, or a similar program, shall register at the time the person is placed under supervision or no later than 120 days after the effective date of this act, whichever is later, in accordance with procedures established by the Department of Corrections, the Department of Human Services, the Juvenile Justice Commission ... or the Administrative Office of the Courts, whichever is responsible for supervision.

[*Ibid.*]

That provision regarding persons in the "community on probation, parole, furlough, work release, or a similar program," refers to sentencing dispositions made pursuant to *N.J.S.A.* 2C:43–2b(5), (6) and (7). Those Code dispositions, however, do not include situations in which persons in the community have been discharged from probation and the only remaining function of the probation department is to collect the VCCB penalty. The four dispositions enumerated under *N.J.S.A.* 2C:7–2c(1) have in common a level of restriction or limitation on the individual's conduct or activity in the community that is not associated with someone merely required to pay a VCCB penalty.

Likewise, *N.J.S.A.* 2C:43–6.4, adopted as part of Megan's Law, suggests that the payment of a VCCB assessment is distinct from community supervision. That statute "makes supervision for life part of any sentence for aggravated sexual assault, sexual assault, aggravated sexual contact, luring and those kidnappings under [*N.J.S.A.*] 2C:13–1c(2)." Cannel, *New Jersey Criminal Code Annotated*, comment on *N.J.S.A.* 2C:43–6.4 (2002). Subsection b of *N.J.S.A.* 2C:43–6.4 provides that "[p]ersons serving a special sentence of community supervision shall be supervised as if on parole and subject to conditions appropriate to protect the public and foster rehabilitation." Clearly, the collection of a VCCB

penalty by a probation department does not entail the type of strict supervision provided by the parole authorities designed "to protect the public and foster rehabilitation" of defendant.

In addition, among the sentencing options authorized by the Code pursuant to *N.J.S.A.* 2C:43–2b, the payment of a fine, pursuant to *N.J.S.A.* 2C:43–2b(4), is a separate disposition from "release under supervision in the community," *N.J.S.A.* 2C:43–2b(5). The comment to *N.J.S.A.* 2C:43–2b(5) states that "[c]ommunity release with supervision was intended to be much like probation but the defendant was to be supervised by some unofficial person or organization rather than by the Probation Office." Cannel, *New Jersey Criminal Code Annotated*, comment 5 on *N.J.S.A.* 2C:43–2b(5) (2002). Thus, community supervision contemplated under both *N.J.S.A.* 2C:7–2b(2) and *N.J.S.A.* 2C:43–2b(5) implies the critical monitoring of a defendant's behavior not involved when a county probation department merely acts as a collection agency.

Federal law addressing the issue has reached a similar conclusion. The Wetterling Act, 42 *U.S.C.A.* § 14071, established sex offender registration programs less than two months before Megan's Law became effective. In relevant part, the Wetterling Act states that a sex offender is required to register if he or she is "released from prison, or placed on parole, *supervised release*, or probation." 42 *U.S.C.A.* § 14071(b)(1)(A) (emphasis added). Except for the use of the phrase "supervised release," the federal act is identical to Megan's Law. Although not specifically defined in the Wetterling Act, another federal statute, 18 *U.S.C.A.* § 3624(e), addressing "Release of a prisoner," defines "[s]upervision after release" as:

> [R]elease [ ] [of a prisoner] by the Bureau of Prisons to the supervision of a probation officer who shall, during the term imposed, supervise the person released to the degree warranted by the conditions specified by the sentencing court. The term of supervised release commences on the day the person is released from imprisonment and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release. A term of supervised release does not run during any period in which the person is impris-

oned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days. *No prisoner shall be released on supervision unless such prisoner agrees to adhere to an installment schedule, not to exceed two years except in special circumstances, to pay for any fine imposed for the offense committed by such prisoner.*

[*Ibid.* (emphasis added).]

Like Megan's Law and the Code, the federal act distinguishes supervised release from the payment of a fine. Supervised release requires the critical monitoring of an individual's conduct after he or she has served the custodial aspect of the sentence.

That type of critical monitoring also is reflected in the statutes of other states permitting noncustodial supervision. *See, e.g., Ala.Code* § 15–18–112 (providing that "individual supervision and placement of an inmate in the community" requires "intensive supervision [by] a correctional officer in the community"); *Ark. Code Ann.* § 16–93–1202(h) (defining "supervision" as "direct supervision at varying levels of intensity by either probation officers, in the case of sentences to probation with a condition of community punishment, or parole and post prison supervision officers, in the case of offenders eligible for release on parole or offenders transferred to community punishment or community supervision from the Department of Correction"); *Fla. Stat.* § 948.001(7) (defining "sex offender community control" as "a form of intensive supervision, with or without electronic monitoring, which emphasizes treatment and supervision of a sex offender in accordance with an individualized treatment plan administered by an officer who has a restricted caseload and specialized training"); *Minn. Stat.* § 244.13 (indicating that "intensive community supervision" is a program in which individuals "serv[ing] all or part of a sentence on intensive community supervision or all or part of a supervised release or parole term on intensive supervised release" are supervised by "a probation officer, a corrections agent, or any other qualified person employed in supervising offenders serving a period of intensive community supervision or intensive supervised release"); *Miss.Code Ann.* § 47–7–34(2)–(3) (providing that "post-release supervision programs shall be operated through the probation and parole unit" and "shall be conducted in the same manner

as ... supervised probation, including a requirement that the defendant shall abide by any terms and conditions as the court may establish"); *Tex.Crim. Proc.Code Ann.* § 42.12.[781d](2) (defining "community supervision" as "the placement of a defendant by a court under a continuum of programs and sanctions," during which time a fine or other sentence is probated for a specified period); Melissa C. Beauchesne, *An Act Relating to Criminal Offenses—Parole,* 4 *Roger Williams U.L.Rev.* 836, 836 (1999) (citing *R.I. Gen. Laws* § 13–8–30 (1956)(1994 Reenactment & Supp.1998)) (providing that Rhode Island's mandatory requirement of community supervision for persons convicted of first- or second-degree child molestation is aimed to "protect[ ] the public from those who have committed a sex offense ... [and] to serve as a method of rehabilitation for sex offenders").

### D.

■ Although we agree with the trial court and the Appellate Division that Megan's Law should be construed broadly to achieve its goal of protecting the public, we find that interpreting the language "other form of community supervision" to include the collection of unpaid VCCB penalties does not further that goal. The registration requirement under Megan's Law simply is no substitute for nonpayment of a VCCB penalty. Frequently, a defendant's failure to pay a VCCB penalty or fine will be due to an inability to pay. Yet, under the Appellate Division's decision, a marginal sex offender without financial resources to pay the VCCB penalty would be required to register, while a more egregious sex offender who had the financial wherewithal to have paid the penalty would not. Such a distinction is intolerable.

### III.

The judgment of the Appellate Division is reversed. The matter is remanded to the Law Division to dismiss the indictment and to remove defendant's name from the list of Megan's Law registrants.

*For reversal and remandment*—Justices COLEMAN, LONG, LaVECCHIA, ZAZZALI, and ALBIN—5.

*Opposed*—None.