862 A.2d 1178 (2004)
373 N.J. Super. 559
STATE of New Jersey, Plaintiff-Respondent,
v.
Frank GYORI, Jr., Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted November 9, 2004.
Decided December 22, 2004.
Maynard & Truland, attorneys for appellant (Edward P. Busichio, on the brief).
Michael M. Rubbinaccio, Morris County Prosecutor, Attorney for respondent (Catherine M. Broderick, Assistant Prosecutor, on the brief).
Before Judges COBURN, WECKER and GRAVES.
The opinion of the court was delivered by
COBURN, J.A.D.
The primary goal of Megan's Law, N.J.S.A. 2C:7-1 to -19, is protection of the public from the dangers of recidivism posed by sex offenders. To achieve that goal the Legislature enacted a system of registration that requires defendants to keep the police informed of where they reside by registration, re-registration, notification, and verification. We granted defendant's motion for leave to appeal to decide whether a defendant's failure to annually verify his address with the local police department with which he had registered is a crime under Megan's Law. Because we believe that Megan's Law gives fair notice that a failure to verify annually is a crime, we affirm the trial court's decision denying defendant's motion to dismiss the indictment.
The Grand Jury minutes reveal the following facts. In 1994, a judgment was entered adjudicating defendant delinquent for an aggravated sexual assault. He was placed on probation and thereafter registered under Megan's Law with the Washington Township Police Department. He *1179 later moved, apparently to another county, and in 2002, he returned to live in Washington Township. On January 29, 2002, he re-registered with the Washington Township Police Department. At that time he signed a standard form acknowledging that his next verification date was January 29, 2003. Although the form was not marked in evidence before the Grand Jury, defendant does not deny that it includes this statement:
7. I understand that I may be charged with a fourth degree crime subjecting me to 18 months in prison (Pursuant to N.J.S.A. 2C:7-2) if I fail to register, re-register, verify my address, or provide correct information, as required by law.
Defendant failed to verify his address with the Washington Township Police Department until March 14, 2003, and did so at that time only in response to a police inquiry.
The Morris County Grand Jury indicted defendant for failure to register under N.J.S.A. 2C:7-2a, a fourth-degree crime. Defendant moved for dismissal, arguing that his conduct, a failure to verify his address one year after re-registering, is not a failure to register. He claimed that although the statute expressly makes failure to register and re-register a crime, it provides no penal consequence for a defendant's failure to annually verify his address. The State argued that under a proper construction of the statute, a failure to verify on an annual basis is a crime. The trial court agreed with the State and denied the motion to dismiss.
We begin our analysis with a description of the relevant provisions of Megan's Law, which contain four critical and interrelated requirements: registration, re-registration, notification, and verification. The central role played by all of those requirements is explained in the statute's opening section:
The Legislature finds and declares:
a. The danger of recidivism posed by sex offenders and offenders who commit other predatory acts against children, and the dangers posed by persons who prey on others as a result of mental illness, require a system of registration that will permit law enforcement officials to identify and alert the public when necessary for public safety.

b. A system of registration of sex offenders and offenders who commit other predatory acts against children will provide law enforcement with additional information critical to preventing and promptly resolving incidents involving abuse and missing persons.

[N.J.S.A. 2C:7-1 (emphasis added).]
The next subsection begins with the statement that an included defendant "shall register as provided in subsections c. and d. of this section." N.J.S.A. 2C:7-2a (emphasis added). We note that the specific references to subsections c and d are critical to defendant's argument because he claims that it is only a failure to follow the dictates of those sections that results in commission of the fourth-degree crime. But subsection N.J.S.A. 2C:7-2a(2) speaks more generally. After giving certain initial registration requirements for persons registered as sex offenders in another state, it concludes with these words: "A person who fails to register as required under this act shall be guilty of a crime of the fourth degree." Ibid. (emphasis added).
After detailing the sex offenses requiring registration, N.J.S.A. 2C:7-2b, the statute then describes the requirements for registration, indicating when, with whom, and how various categories of defendants are to register. N.J.S.A. 2C:7-2c (emphasis added). Subsection 2d then states what a defendant must do on a change of address, employment, or school enrollment by way of re-registration, if *1180 another municipality becomes involved, and notification in all instances. Because its specific language is important, we quote it in full:
Upon a change of address, a person shall notify the law enforcement agency with which the person is registered and shall re-register with the appropriate law enforcement agency no less than 10 days before he intends to first reside at his new address. Upon a change of employment or school enrollment status, a person shall notify the appropriate law enforcement agency no later than five days after any such change. A person who fails to notify the appropriate law enforcement agency of a change of address or status in accordance with this subsection is guilty of a crime of the fourth degree.

[N.J.S.A. 2C:7-2d (emphasis added).]
The next subsection, the one that defendant specifically violated, concerns address verification. And it reads as follows:
A person required to register under paragraph (1) of subsection b. of this section or under paragraph (3) of subsection b. due to a sentence imposed on the basis of criteria similar to the criteria set forth in paragraph (1) of subsection b. shall verify his address with the appropriate law enforcement agency every 90 days in a manner prescribed by the Attorney General. A person required to register under paragraph (2) of subsection b. of this section or under paragraph (3) of subsection b. on the basis of a conviction for an offense similar to an offense enumerated in paragraph (2) of subsection b. shall verify his address annually in a manner prescribed by the Attorney General. One year after the effective date of this act, the Attorney General shall review, evaluate and, if warranted, modify pursuant to the "Administrative Procedure Act," P.L.1968, c. 410 (C.52:14B-1 et seq.) the verification requirement.
[N.J.S.A. 2C:7-2e.]
Defendant relies, in part, on the absence in subsection 2e of a declaration that a failure to verify is a crime. He sees this as significant because, by contrast, in subsection 2d the Legislature declared that failure to notify is a crime. But in Doe v. Poritz, 142 N.J. 1, 662 A.2d 367 (1995), which upheld the constitutionality of Megan's Law, the Court noted that "[d]espite complexities of detail, the Registration Law is basically simple." Id. at 20, 662 A.2d 367. In the following paragraph, concerning what "[r]egistration requires," after describing initial registration under N.J.S.A. 2C:7-2c, the Court observed that "[r]egistrants whose conduct was repetitive and compulsive must verify their addresses with the local law enforcement agency quarterly, [while] other registrants must do so annually." Id. at 21, 662 A.2d 367. The Court concluded its description of registration by summarizing N.J.S.A. 2C:7-2d, which then concerned re-registration on moving to another municipality, and now requires, as well, notification to the appropriate law enforcement agency of a change of address, employment or school enrollment within any municipality. Ibid. After noting that "[a]ll of these are lifetime requirements," the Court said that "[f]ailure to comply with the Registration Law is a fourth-degree crime." Id. at 21-22, 662 A.2d 367.
In In re Registrant J.G., 169 N.J. 304, 777 A.2d 891 (2001), the Court again said that "[r]egistrants other than those whose conduct was repetitive and compulsive annually must verify their address with the local enforcement agency, and provide notice of any change of address. N.J.S.A. 2:7-2d to -2e." Id. at 319, 777 A.2d 891. Quoting Doe, the Court re-affirmed in broad terms that failure to comply with "the Registration Law is a fourth-degree crime." Id. at 320, 777 A.2d 891. And in State v. S.R., 175 N.J. 23, 811 A.2d 439 *1181 (2002), the Court held that "Megan's Law should be construed broadly to achieve its goal of protecting the public...." Id. at 36, 811 A.2d 439.
If defendant's interpretation of the statute is correct, what the Court in Doe and J.G. considered and described as mandatory, a concept that only has meaning if backed up by a penalty, would be merely precatory, a result that would substantially undercut the purposes of Megan's Law, as expressed in N.J.S.A. 2C:7-1, quoted above. Since those cases did not involve the precise arguments offered here, the quoted statements can be viewed as dictum and therefore not binding. But, the Court offered the statements as deliberate interpretations of the statute, and therefore, absent extraordinary circumstances, we should abide by them. Cf. State v. Rush, 46 N.J. 399, 416, 217 A.2d 441 (1966).
In addition to rejecting defendant's interpretation as inconsistent with what the Court said in Doe and J.G., we are ourselves satisfied that it is not called for by the rules of statutory construction, to which we now turn.
Since a criminal law is involved, we take note of the "doctrine that penal statutes must be strictly construed." State v. Valentin, 105 N.J. 14, 17, 519 A.2d 322 (1987) (citations omitted). There, after pointing out that the doctrine is designed to serve the requirement of due process by insuring that no one will be punished criminally unless the crime and its punishment are clearly described by legislation, the Court said this:
Penal laws cannot be extended by implication or intendment. Where more than one reasonable interpretation may be made, or where the language is ambiguous  and the ambiguity is not manufactured by the defendant  the construction must be drawn against the state.
[Id. at 18, 519 A.2d 322 (citations omitted).]
Our understanding of that statement is enhanced by an earlier discussion of the principle of strict construction of penal laws in In re Suspension of De Marco, 83 N.J. 25, 414 A.2d 1339 (1980). Writing for the Court, Chief Justice Wilentz said that "[i]t does not invariably follow, however, that every time someone can create an argument as to the meaning of a penal sanction, the statute is impermissibly vague...." Id. at 36, 414 A.2d 1339. He then described the applicable principles in this way:
The question ultimately is one of fairness, given the statute and its provisions, and given the situation of the defendant. Should he have understood that his conduct was proscribed.... The test is whether the statute gives a person of ordinary intelligence fair notice that his conduct is forbidden and punishable by certain penalties. That test, however, does not consist of a linguistic analysis conducted in a vacuum. It includes not simply the language of the provision itself, but related provisions as well, and especially the reality to which the provision is to be applied.

[Id. at 37, 414 A.2d 1339 (emphasis added).]
The next year, again writing for the Court, Chief Justice Wilentz observed, that "the Code itself has its own principles of construction which do not mention any rule of `strict construction' but rather, provide that where `the language [of the Code] is susceptible of differing constructions it shall be interpreted to further the general purposes' stated in section 2C:1-2 and the special purposes of the particular provision involved." State v. Maguire, 84 N.J. 508, 514 n. 6, 423 A.2d 294 (1980).
Although one of the general purposes is "[t]o give fair warning of the nature of the conduct proscribed and of the sentences *1182 authorized upon conviction," N.J.S.A. 2C:1-2a(4), other purposes include preventing conduct that "unjustifiably and inexcusably ... threatens serious harm to individual or public interests," N.J.S.A. 2C:1-2a(1), and subjecting "to public control persons whose conduct indicates that they are disposed to commit offenses." N.J.S.A. 2C:1-2a(3). While no purpose is to be achieved at the expense of another, "[t]he provisions of the code shall be construed according to the fair import of their terms," N.J.S.A. 2C:1-2c, and "when language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this section and the special purposes of the particular provision involved." Ibid.
Construing Megan's Law as providing that failure to verify under subsection 2e is a failure to register obviously serves its special purpose, close supervision of registrants to protect the public, and the general public safety purposes noted above. It also accords with the Legislative history, which indicates an understanding that verification would be mandatory, not precatory. Senate Law and Public Safety Committee, Statement to A.84 at 2 (September 26, 1994).
The remaining question is whether this construction is fair. Defendant argues that it is not because N.J.S.A. 2C:7-2a(1) specifically refers to subsections 2c and 2d, and not to subsection 2e, and because 2d says that failure to notify is a crime while 2e does not say the same respecting failure to verify. But it is not subsection 2a(1) that defines the crime; it merely directs a defendant's attention to the sections governing registration and re-registration, respectively. The critical language appears in subsection 2a(2), which provides in broad terms that "[a] person who fails to register as required under this act shall be guilty of a crime of the fourth degree." N.J.S.A. 2C:7-2a(2)(emphasis added).
In our view, registration "as required under this act" includes verification under N.J.S.A. 2C:7-2e. We reach that conclusion not because it is the only plausible reading of the legislation but because, given the law's overarching purpose, it is the only reading that makes sense.
When all is said and done, the matter of statutory construction here will not justly turn on literalisms, technisms or so-called formal rules of interpretation; it will justly turn on the breadth of the objectives of the legislation and commonsense of the situation.
[Jersey City Chapter of Property Owner's Protective Ass'n v. City Council of Jersey City, 55 N.J. 86, 100, 259 A.2d 698 (1969).]
We are not constrained to a "linguistic analysis conducted in a vacuum." De Marco, supra, 83 N.J. at 37, 414 A.2d 1339. We are obliged to consider the defendant's situation and "especially the reality to which the provision is to be applied." Ibid. Certainly, the statute in no uncertain terms tells defendants that they must verify their addresses, either quarterly or annually, depending on their precise status. No reasonable defendant would think that a requirement of this sort, expressed in mandatory terms, was merely a request. Therefore, he would know that a failure to verify was proscribed and punishable as a fourth-degree crime; indeed, as the crime of failing to register "as required" under the act.[1]
Affirmed.
*1183 WECKER, J.A.D., dissenting.
I respectfully dissent because I do not believe that N.J.S.A. 2C:7-2, enacted as part of Megan's Law, "gives fair notice that a failure to verify annually is a crime." Op. at 560, 862 A.2d at 1178. The first rule of statutory interpretation is to begin with the plain language of the law. The plain language of this law leads me to conclude that the failure of a registrant to verify an existing address is not itself a separate fourth-degree crime. Whether or not the Legislature actually intended to criminalize this failure, it did not do so. I would therefore reverse defendant's conviction.
N.J.S.A. 2C:7-2a(1) provides:
A person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sex offense as defined in subsection b. of this section shall register as provided in subsection c. and d. of this section.
N.J.S.A. 2C:7-2a(2) provides in pertinent part that "[a] person who fails to register as required under this act shall be guilty of a crime of the fourth degree." Subsection b lists those offenses that bring an individual within the scope of the duty to register; subsection c describes registration procedures and deadlines; subsection d defines the obligation to re-register upon a change of address; and subsection e defines the obligation to verify the registered address on a regular basis  annually in defendant's case:[1]

A person required to register under paragraph (1) of subsection b. of this section or under paragraph (3) of subsection b. due to a sentence imposed on the basis of criteria similar to the criteria set forth in paragraph (1) of subsection b shall verify his address with the appropriate law enforcement agency every 90 days in a manner prescribed by the Attorney General. A person required to register under paragraph (2) of subsection b. of this section or under paragraph (3) of subsection b. on the basis of a conviction for an offense similar to an offense enumerated in paragraph (2) of subsection b. shall verify his address annually in a manner prescribed by the Attorney General. One year after the effective date of this act, the Attorney General shall review, evaluate and, if warranted, modify pursuant to the "Administrative Procedure Act," P.L.1968, c. 410 (C.52:14B-1 et seq.) the verification requirement.
Whereas N.J.S.A. 2C:7-2a(2) ("subsection a(2)") provides that a failure "to register as required under [subsection c of] this act" is a fourth degree crime, and subsection d provides that a failure "to notify the appropriate law enforcement agency of a change of address or status" is a fourth degree crime, subsection e merely provides that there is an obligation to verify an existing, previously registered address on a regular basis; it does not provide that the failure to verify is a separate fourth degree crime.
The majority notes the Legislature's finding that "[t]he danger of recidivism posed by sex offenders ... require[s] a system of registration that will permit law enforcement officials to identify and alert the public when necessary for the public safety." N.J.S.A. 2C:7-1 (emphasis added). But viewing the duty to verify as part of a "system of registration" does not, in my view, sufficiently make up for the omission of any express language in subsection e, providing, as do subsections a(2) and d, that "[a] person who fails to register as required under this act shall be guilty of *1184 a crime of the fourth degree." See N.J.S.A. 2C:7-2a(2); N.J.S.A. 2C:7-2d.
The majority relies substantially upon the language of subsection a(2), which provides "[a] person who fails to register as required under this act shall be guilty of a crime of the fourth degree." (Emphasis added.) If, however, subsection a(2) applies to all violations of N.J.S.A. 2C:7-2, including the duty to verify, then it applies to the duty to re-register as well, and there is no reason for subsection d to define a failure to re-register as a fourth degree crime. That portion of section d is entirely superfluous under the majority's reading of the statute.
The majority further relies upon the Supreme Court's general reference to "registration" requirements in Doe v. Poritz, 142 N.J. 1, 662 A.2d 367 (1995) (rejecting a constitutional challenge to Megan's Law). There the Court said, in its summary of the Law, "[f]ailure to comply with the Registration Law is a fourth-degree crime." Id. at 22, 662 A.2d 367 (citing N.J.S.A. 2C:7-2a); see also In re Registrant J.G., 169 N.J. 304, 320, 777 A.2d 891 (2001) (quoting the same language in Doe). Such a general reference to "the Registration Law," in cases where the duty to verify was not directly in issue, does not change the fact that the statute does not place the registrant on notice that failure to verify is itself a fourth degree crime.
I recognize the majority's concern that without a penalty attached to non-compliance, the mandatory verification provision would lack force. But that is a problem for the Legislature to cure. It is not for us to infer the adoption of a criminal penalty where the Legislature has not done so.[2]
In addressing the proposition that penal statutes are to be strictly construed, State v. Valentin, 105 N.J. 14, 17, 519 A.2d 322 (1987), the majority quotes the late Chief Justice Wilentz, discussing principles of statutory construction. In re Suspension of De Marco, 83 N.J. 25, 414 A.2d 1339 (1980). There the issue before the Court was whether a physician's gross negligence in infecting 92 patients with the hepatitis virus constituted one "first offense" or ninety-two separate first offenses for purposes of imposing a $200 statutory fine for a "first offense." Five members of the Court concluded that it was a fair reading of the statute to conclude that the physician, who had never before been convicted of a similar offense, was subject to punishment for each of ninety-two "first" offenses. Describing the question as "ultimately [] one of fairness," the Chief Justice described the test as "whether the statute gives a person of ordinary intelligence fair notice that his conduct is forbidden and punishable by certain penalties." Id. at 37, 414 A.2d 1339.
There is no question that N.J.S.A. 2C:7-2e gives fair notice to defendant of the forbidden conduct: failure to verify. But the statute does not give fair notice that such failure is a fourth degree crime with attendant penalties. The fact that defendant signed a "standard form acknowledging" that he was required to verify his address at a later date, and that the form he signed included the language: "I understand that I may be charged with a fourth degree crime ... if I fail to register, re-register, *1185 verify my address, or provide correct information, as required by law," does not cure the defect in this prosecution. I know of no authority for the proposition that a defendant's acknowledgement that certain conduct may subject him to criminal prosecution makes such conduct a crime if no statute so provides. Nor is this defendant's subjective understanding of the statute legally relevant.
Chief Justice Wilentz also cautioned that the test of fairness requires a court to look at related provisions as well as "the language of the [contested] provision itself" and "the reality to which the provision is to be applied." De Marco, supra, 83 N.J. at 37, 414 A.2d 1339. If we look to the entire code section, N.J.S.A. 2C:7-2, and "the reality," it is equally if not more logical that the section does not criminalize failure to verify, as it does failure to register or re-register. There is, after all, less danger to the public from an individual's failure to verify his address than from a failure to register in the first place, or to re-register a new address. One premise of registration is that local police authorities know where a convicted sex offender lives and works and can keep a watchful eye on him to confirm his whereabouts. If the individual disappears for a period of time, local authorities are likely to notice. In any event, the risk of an unannounced change of address exists whether or not the individual has verified his address on the required schedule.
One closely related provision of Megan's Law as enacted in 1994,[3] amended and redrafted by L. 2003, c. 267, § 1, provides that a person sentenced for the most serious sex offenses[4] "shall" also be sentenced to "a special sentence of parole supervision for life." N.J.S.A. 2C:43-6.4a.[5] Such a sentence means the person is "in the legal custody of the Commissioner of Corrections" and is "supervised by the Division of Parole of the State Parole Board." N.J.S.A. 2C:43-6.4b. Under N.J.S.A. 2C:43-6.4d, "[a] person who violates a condition of a special sentence ... without good cause is guilty of a crime of the fourth degree." That statute provides that certain conduct, or more accurately, misconduct, would henceforth constitute an independent crime, and not merely an administrative or parole violation. Maintaining contact, including one's current residence, with a parole officer is among the conditions of such parole supervision.[6] If such a parolee were to fail to verify his residence, there likely would be a corresponding violation of parole conditions, subjecting the individual to punishment, including prosecution for a fourth degree crime. We should not create a separate, potentially overlapping fourth degree crime by reading such language into N.J.S.A. 2C:7-2e. My disagreement with the majority is that neither the "related provisions" of Megan's Law nor the "reality" supply the omitted statutory notice or *1186 require the inference that failure to verify one's address is a fourth degree crime.
Whereas the majority quotes State v. S.R., 175 N.J. 23, 36, 811 A.2d 439 (2002), for the proposition that Megan's Law "should be construed broadly," the Court's actual holding in that case limited the reach of Megan's Law. The Court there reversed the defendant's conviction for failing to register, rejecting the State's contention that an individual whose probationary sentence for a sexual offense had ended before the effective date of Megan's Law, but who had not fully paid his V.C.C.B. penalty, remained a probationer subject to the registration provisions of Megan's Law.
I recognize the rule of construction set forth at N.J.S.A. 2C:1-2, requiring that when a criminal statute permits different interpretations, the court is to consider the particular purposes of the legislation before choosing the appropriate interpretation. Although verification of a convicted sex offender's address clearly is related to the registration requirement and its underlying purpose to protect the public, that is not enough. Just as subsection d explicitly states that failure to re-register is a fourth degree crime, subsection e must say that failure to verify is a fourth degree crime before an individual can be convicted of such an offense.
I have considered whether federal law known as the Wetterling Act, 42 U.S.C.A. § 14071 (the Act), which created guidelines for State sex offender registration programs such as those established by Megan's Law, should affect our decision. Specifically, the Act requires that "[a]n approved State registration program" for sex offenders must include certain elements, including initial registration, notice of a change of address, and "procedures ... for verification of address at least annually." 42 U.S.C.A. § 14071(b)(3)(A).[7]N.J.S.A. 2C:7-2e meets that requirement. The federal Act provides for a partial loss of otherwise available federal funding to a state that fails to enact legislation consistent with the Act, 42 U.S.C.A. § 14701(g)(2)(A), and includes the following provision:
A person required to register under a State program established pursuant to this section who knowingly fails to so register and keep such registration current shall be subject to criminal penalties in any State in which the person has so failed.
[42 U.S.C.A. § 14071(d) (emphasis added).]
Parole supervision as provided by N.J.S.A. 2C:43-6.4, with all of its implied conditions, appears to me to meet the federal requirement.[8]
Even if the penalty provisions of N.J.S.A. 2C:7-2 and N.J.S.A. 2C:43-6.4 combined are determined to be insufficient to meet the federal requirement, which does not appear to me to be the case, it nonetheless would remain the Legislature's prerogative to amend the law.[9]
NOTES
[1] Defendant also argued that the Assignment Judge should have dismissed the action under N.J.S.A. 2C:2-11, which concerns de minimis infractions, and has pursued that argument on appeal. In this context, the point is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). But in other circumstances, for example, verification within a few days of the required date or a somewhat longer delay with good reason, resort to the de minimis statute might very well be appropriate.
[1] Subsections f and g are not relevant to the issue before us.
[2] For us to infer that failure to verify is a fourth degree crime because it is a "plausible" or sensible interpretation, as the majority suggests (slip op. at 11), would be to ignore an equally if not more plausible inference: that because the duty to verify one's address implicitly arises only after one has previously complied with Megan's Law by registering, failure to verify is a less serious offense than either failure to register or failure to re-register, and enforcement is adequately addressed through parole supervision pursuant to N.J.S.A. 2C:43-6.4
[3] See L. 1994, c. 130, § 2.
[4] Those offenses include aggravated sexual assault, N.J.S.A. 2C:14-2a; sexual assault, N.J.S.A. 2C:14-2b; aggravated criminal sexual contact, N.J.S.A. 2C:14-3; kidnapping, N.J.S.A. 2C:13-1; endangering the welfare of a child by engaging in sexual conduct which would impair or debauch the morals of a child, N.J.S.A. 2C:24-4a; endangering the welfare of a child, N.J.S. 2C:24-4b(3), and "luring or an attempt to commit any of these offenses." N.J.S.A. 2C:43-6.4a.
[5] Defendant, having been convicted of aggravated sexual assault, is subject to community supervision for life, N.J.S.A. 2C:43-6.4, as well as registration pursuant to N.J.S.A. 2C:7-2.
[6] N.J.S.A. 30:4-123.59b sets forth specific conditions of parole, including that the parolee will "obtain permission from his parole officer for any change in his residence, and... report at reasonable intervals to an assigned parole officer."
[7] The Act is largely addressed at insuring that convicted sexual offenders who move from one state to another are made known to the receiving state.
[8] My research has revealed no reported federal decision addressing the question whether the requirement that states establish criminal penalties for failure to "keep [one's] registration current," requires criminalizing failure to "verify."
[9] This is not analogous to an application of the principle of statutory construction that would have us choose the construction that avoids a constitutional violation. See State v. Profaci, 56 N.J. 346, 350, 266 A.2d 579 (1970).