**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

——————

No. 15-3502

——————

SALAHUDDIN F. SMART,
Appellant

v.

INTENSIVE SUPERVISION PROGRAM;
SHIRLEY LENNON, Regional Supervisor;
CRAIG FOX, ISP Officer;
ISP SOUTHERN REGIONAL OFFICE, Intensive Supervision, Manager

———————————————————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 1:14-cv-02302)
District Judge:  Honorable Robert B. Kugler

———————————————————

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 1, 2016
Before:  JORDAN, BARRY and VAN ANTWERPEN, Circuit Judges

(Opinion filed:  June 6, 2016)

——————

OPINION*

——————

PER CURIAM

Salahuddin F. Smart appeals the District Court's order granting summary

judgment in favor of Defendants.  For the reasons that follow, we will affirm.

———————————

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not

Smart is a participant in the state of New Jersey's Intensive Supervision Program ("ISP"). The ISP was created by the New Jersey judiciary as a "post-incarceration program of judicial intervention and diversion back into the community." State v. S.R., 811 A.2d 439, 443 (N.J. 2002). To that end, the ISP requires its participants to maintain full-time employment, keep a twelve-hour curfew from 6:00 p.m. to 6:00 a.m., perform community service, and submit to searches and regular tests for drugs or alcohol. See State v. Stewart, 642 A.2d 942, 944 (N.J. 1994). At issue here is the ISP's drug-testing policy, which involves a direct observation method for obtaining urine samples for urinalysis—that is, an ISP employee must observe "the voiding of urine directly from the participant to the specimen jar." ISP Policy on Urine Monitoring 1.

After Smart was required to provide a urine sample under an ISP employee's direct observation, he filed suit under 42 U.S.C. § 1983, claiming that his Fourth Amendment rights were violated. Specifically, Smart alleged that Defendant Fox ordered him to provide a urine sample as Fox watched. Smart objected to Fox watching him urinate, but Fox ordered Smart to remove his pants so that Fox could directly observe him. Smart alleged that Defendant Fox thus humiliated him and subjected him to a "strip search" in violation of his Fourth Amendment rights. Smart also named as Defendants the ISP, the ISP Southern Regional Office, and Defendant Lennon, who is Fox's manager at the ISP, claiming that she was liable for failing to properly train Fox.[1]

_____

constitute binding precedent.

[1] Smart also claimed that Defendant Lennon violated his right to access the courts by failing to set a hearing date in a timely manner. The District Court dismissed that claim on a separate motion, and Smart has not challenged that decision on appeal. Accordingly, we will not address it here. See United States v. Pelullo, 399 F.3d 197, 222

The District Court granted summary judgment in favor of Defendants.[2] It ruled that the ISP and the ISP Southern Regional Office enjoyed Eleventh Amendment immunity from Smart's suit. Likewise, the Court ruled that Defendants Lennon and Fox were immune from suit challenging actions taken in their official capacities. To the extent Smart sued either Defendant in his or her individual capacities, the District Court ruled that the ISP's direct observation method complied with the Fourth Amendment.

Smart appealed. We have jurisdiction under 28 U.S.C. § 1291 and exercise a plenary standard of review. See State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C., 566 F.3d 86, 89 (3d Cir. 2009). The key issue in this case—whether the ISP's direct observation method violated Smart's Fourth Amendment rights—is one of law, over which we exercise plenary review. See Wilcher v. City of Wilmington, 139 F.3d 366, 373 (3d Cir. 1998).

The Fourth Amendment guarantees the "right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. State-compelled collection and testing of urine constitutes a "search" that must comply with the strictures of the Fourth Amendment. Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 652 (1995). Law enforcement must typically obtain a warrant before executing a search for the purpose of investigating criminal wrongdoing. Id. at 653. However, a warrantless search can be constitutional where a special need—different from the need for criminal investigation and traditional law enforcement—makes the warrant and probable-cause

---

(3d Cir. 2005) ("It is well settled that an appellant's failure to identify or argue an issue in his opening brief constitutes waiver of that issue on appeal.").

[2] Smart also moved for summary judgment, which the District Court denied.

requirements impracticable.  Id. at 653.  The Supreme Court has applied this "special needs" doctrine to permit suspicionless searches involving the provision of urine samples, where the purpose of the search extends beyond the investigation of a crime.  Id.; see also Griffin v. Wisconsin, 483 U.S. 868, 873-74 (1987) (concluding that a "State's operation of a probation system" implicates special needs).

We conclude that, contrary to some conclusory allegations that Smart has made in his reply brief, because Defendant Fox—an ISP officer—was unquestionably seeking to ensure compliance with ISP mandates as set forth in the ISP Policy on Urine Monitoring, the special-needs doctrine applies here.  See Norris v. Premier Integrity Sols., Inc., 641 F.3d 695, 698 (6th Cir. 2011) ("The use of that [direct observation] method involves a matter of judicial administration, not law enforcement.").  In these circumstances, a search is constitutional if it meets a general test of "reasonableness."  See Wilcher, 139 F.3d at 374.  In applying this standard, we must consider: (1) the nature of Smart's privacy interest; (2) the extent to which the search intrudes on that interest; and (3) the nature of the governmental concern at issue and the efficacy of the means employed for meeting that concern.  Id.

Smart—as a participant in the highly-regulated ISP—enjoys only a diminished expectation of privacy for two related reasons.  First, Smart's participation in the ISP itself reduced his expectation of privacy because the ISP requires its participants to consent to its strict limitations, including limiting their right to travel, prohibiting their use of drugs or alcohol, and requiring them to submit to searches of their persons and residences.  See Norris, 641 F.3d at 699 (so holding in similar circumstances); see also

4

Samson v. California, 547 U.S. 843, 849 (2006) ("a condition of release can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment.").  Just as firefighters had a reduced expectation of privacy because they worked in a highly regulated field, Wilcher, 139 F.3d at 374-75, Smart's participation in the highly regulated, Government-controlled ISP reduced his expectation of privacy.  Second, Smart agreed to random testing for drugs and alcohol as a condition of participating in the voluntary ISP; his broad consent also diminished his expectation of privacy.  See United States v. Knights, 534 U.S. 112, 119-120 (2001).

We turn to the character of the search and to the extent to which it intruded on Smart's diminished privacy interest.[3]  We acknowledge that the direct observation method of obtaining a urine sample is intrusive.  See Norris, 641 F.3d at 699; see also Wilcher, 139 F.3d at 376.  Nevertheless, the Supreme Court has "repeatedly refused to declare that only the 'least intrusive' search practicable can be reasonable under the Fourth Amendment."  City of Ontario v. Quan, 560 U.S. 746, 763 (2010) (internal quotation omitted).

Meanwhile, the Government concern at issue—namely, preventing ISP participants from cheating on drug tests—is significant.  Wilcher, 139 F.3d at 377

---

[3] Smart argues that, because he was required to pull down his underwear, he was "strip searched."  We need not determine whether the search at issue is more appropriately characterized as a strip search as opposed to a search using the direct observation method because, "however one describes the search, the balancing inquiry under the Fourth Amendment remains the same."  Norris, 641 F.3d at 701; see also Safford Unified Sch. Dist. No. 1 v. Redding, 557 U.S. 364, 374 (2009) ("The exact label for this final step in the [search] is not important.").

("Cheating is a significant concern."). New Jersey has an interest in "integrating probationers back into the community and combating recidivism," Samson, 547 U.S. at 849, and, to that end, in drug testing and providing substance-abuse treatment, see Administrative Office of the Courts, New Jersey Intensive Supervision Program, Progress Report (2011); see also ISP Policy on Urine Monitoring ("The goals of ISP urine monitoring are to ensure compliance with program mandates to remain drug and alcohol free, to provide a level of safety to the community, and to identify participants who require substance abuse treatment to successfully complete ISP."). Given New Jersey's "interest in conducting the tests . . . in the first place, certainly the government has a valid interest in ensuring that those tests produce valid and reliable results." Norris, 641 F.3d at 701 (quotation marks omitted).[4] We have previously recognized that the direct-observation method is effective in preventing individuals from cheating on urinalysis tests, see Wilcher, 139 F.3d at 377, and, as the Defendants have explained, this method is widely used (and is specifically prescribed by the American Probation and Parole Association). Thus, we are satisfied that New Jersey has a compelling interest in the direct-observation procedures.

Balancing the relevant factors, as in Wilcher, we conclude that the direct observation method was reasonable under the Fourth Amendment. Because Smart has

---

[4] Indeed, in accepting Smart into the ISP, the ISP Resentencing Panel imposed the special condition that he obtain drug treatment. Smart was also required to attend an orientation about defrauding the ISP during drug tests, which described the serious consequences of cheating. And Smart signed an acknowledgment that cheating occurs by submitting urine from a false source or possessing a gadget designed to defraud the administration of a drug test.

6

not established that his Fourth Amendment rights were violated, we will affirm the judgment of the District Court awarding summary judgment to each Defendant.[5]

---

[5] Because the District Court correctly concluded that Smart's Fourth Amendment claim lacks merit, we need not determine whether the Defendants were also immune from suit.